# Burnett v. Alabama Power Co.

### Damage for Overflow.

(Decided December 21, 1916. Rehearing denied February 15, 1917. 74 South. 459.)

1. **Pleading; Complaint; Separate Causes in One Count.**—A count in a complaint charging that defendant negligently caused logs, brush, etc., to be and remain upon land, and also caused the same to be negligently submerged by water by means of a dam resulting in injury to plaintiff by decay of such vegetation, is not a claim for two separate and distinct causes of action in the same count, as defendant owed plaintiff no duty to keep its own land clear of brush, etc., and therefore the negligent submerging of the land is the gravamen of the action and the proximate cause; the vegetation on the land merely producing a condition.

2. **Negligence; Pleading; Complaint; Sufficiency.**—A count, charging that defendant negligently submerged its land under conditions described "by means of a dam," although it does not attempt to set up the acts constituting negligence, but describes the conditions and charges generally, was sufficient as a general averment of negligence.

[Burnétt v. Alabama Power Co.]

3. **Negligence; Damnum Absque Injuria.**—If defendant had the lawful right to have logs, brush, and other vegetation on its land, when submerging it with water, whether it did so negligently or not is immaterial, as its motive would produce no cause of action, for any injury resulting to plaintiff by the lawful and proper exercise by defendant of his own rights, is damnum absque injuria.

4. **Negligence; Proximate Cause; Intervening Innocent Act.**—As an exception to the rule that damage to another resulting from lawful exercise of one's rights is damnum absque injuria, where an original act is wrongful and naturally calculated to prove injurious to another, and does actually result in injury through the intervention of other causes, which are not wrongful, the injury will be referred to the wrongful cause passing by those which were innocent.

5. **Negligence; Pleading; Complaint; Sufficiency.**—A count which charges the negligent permitting of the logs, etc., to be and remain upon the land, with a knowledge that injuries would arise by having the same submerged by water, but avers that the defendant had the authority to back said water, and shows that the injuries would not have arisen but for the backing of the water, and concedes that the defendant had the authority to back the water, and, although averring that it became defendants' duty to remove the vegetation as a matter of law, does not charge that the water was negligently backed, held defective and subject to demurrer.

6. **Waters and Water Courses; Flowage; Pleading; Proof.**—To establish negligence, under an averment that defendant by means of a dam negligently caused water to back, producing injuries set forth, the dam must be shown to have been negligently or wrongfully constructed or maintained.

7. **Eminent Domain; Damage to Property; Constitutional Provision.**—Consequential damages to persons caused by the decay of vegetable matter submerged by the construction of a dam involve no injury to property which is protected by Const. 1901, section 235, providing for compensation for property taken, injured, or destroyed in construction of public works.

8. **Eminent Domain; Damages to Private Property; Nuisance; Governmental Authority.**—Where a dam was constructed by defendant in the aid of navigation under the authority of the government, and in strict compliance with the plans and specifications of the government under Act Cong. March 4, 1907, c. 2912, 34 Stat. 1288, which did not require the land to be cleared, the defendant, as the agent of the government, was relieved from liability for a·nuisance, caused by decay of vegetable matter submerged, and is not liable for consequential damages except to property, since there can be no recovery for damages, or relief from consequences, incidentally resulting from acts or things, performed or conducted in a proper manner under legal authority, and which but for such legislation would constitute a nuisance, and the sovereign controls navigable streams, and the riparian owner acquires rights subject to such control and right of sovereign to make reasonable improvements, which may be delegated, and unless some constitutional right is invaded, there can be no liability for consequential damages.

McClellan and Gardner, JJ., dissenting in part.

APPEAL from Chilton Circuit Court.
Heard before Hon. W. W. PEARSON.

Action by W. R. Burnett against the Alabama Power Company for damages for overflow and otherwise. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The counts referred to in the opinion are as follows:

(B) Plaintiff claims of the defendant the sum of $2,500 for that during the time of the grievances hereinafter complained of plaintiff resided with his family on a piece or parcel of land in Chilton county, Ala., in close proximity to Waxahatchee creek, a stream flowing into the Coosa river, and plaintiff avers that during the spring or summer of 1914, defendant by means of a dam across the Coosa river below the mouth of Waxahatchee creek negligently caused the water 'of said Waxahatchee creek to back back, or up, and cover with water a great area of land on each side of said creek, and negligently caused large amounts of stagnant water and many small pools of stagnant water to be and reamin near plaintiff's said residence, and negligently caused large amounts of weeds, brush, logs, leaves, underbrush, and other vegetable matter to be and remain submerged and partially submerged in water, and negligently caused same to remain dying and decomposing, and great quantities of mud, slime, filth, and litter was thereby caused to accumulate, settle, and remain on said land so covered with water, and as a proximate consequence of said water becoming and being in the condition described above large numbers of frogs, tadpoles, mosquitoes, and other insects were attracted to, created by, and caused to multiply in and around said body of water, and said smaller pools of stagnant water, and to die and decay in and about said water and great quantities of noxious, odious, and offensive gases, vapors, and odors were caused to be created in and around said water, and plaintiff avers that defendant has constantly maintained said body of water and small pools of water in the condition described above since, to wit, June, 1914, so close to plaintiff's said residence that as a proximate consequence thereof, he and his family have been forced to breathe said offensive gases, and smell said offensive odors continually by day and by night, and has continually been bit, stung, and annoyed by said mosquitoes and other insects, his said home has been caused to be infested with said mosquitoes and other insects, and has been permeated with said offensive and noxious gases and odors, and has been rendered unhealthy and unfit for a home. And plaintiff avers that as a proximate consequence of plaintiff and his family breathing

said impure air, and smelling said offensive odors and being bit, stung, and annoyed by said mosquitoes and other insects as aforesaid, plaintiff and his family were caused to contract sickness, chills, fever, and malaria, and were for a long time rendered sick, and plaintiff and his minor children members of his family were thereby rendered unable to work and earn money, and plaintiff was caused to expend large sums of money for medicine and medical attention for himself and family, and to suffer much physical pain and mental anguish, and was caused to abandon his home, and plaintiff avers that he suffered said injuries and consequent damages as a proximate consequence of defendnt causing said water to be and remain so near plaintiff's said residence as aforesaid, in the condition as aforesaid, and that same contributed to plaintiff's injuries as aforesaid.

(H) Plaintiff's claims of the defendant the sum of $2,500 for that during the time of the grievances herein after complained of, plaintiff resided with his family on a piece or parcel of land in Chilton county, Ala., in close proximity to Waxahatchee creek, a stream flowing into Coosa river, and that the defendant had authority to back the water of said creek up on its lands in close proximity to plaintiff's said residence, and that said lands upon which the defendant had authority to back said water had on them large quantities of brush, logs, stumps, weeds, leaves and other vegetation and vegetable matter, wherefore it became the duty of the defendant before it backed said water up to clean off said lands in close proximity to plaintiff's said residence so as to destroy said debris, and plaintiff avers that this they negligently failed to do, but that in the summer time during very hot weather, to wit, the month of June, 1914, the agents or servants of the defendant while acting within the line or scope of their authority, as such agents or servants of the defendant, negligently caused said debris to be and remain on said land, and to become submerged with water and to remain and to decay, and to decompose in said water, and as a proximate consequence thereof said water become stagnant and become infected with large quantities of mosquitoes and was caused to give off offensive odors and large quantities of mosquitoes and other insects were attracted to, created by and caused to multiply in and around said water in the condition above described, all in close proximity to plaintiff's said residence, and adjacent to lands that he and his family were cultivating, and as a proximate conse-

[Burnett v. Alabama Power Co.]

quence thereof he and his family were forced to breathe offensive odors and gases, and to smell same, and were constantly caused to be bit, stung, and annoyed by said mosquitoes and insects, and his home was caused to be infested with said mosquitoes and other insects, and to be permeated with said offensive gases and odors, and was thereby rendered unhealthy and unfit for a home, and plaintiff was thereby caused to abandon his said home. Plaintiff avers that as a proximate consequence of plaintiff and his family breathing said impure air and smelling said offensive odorse and being bit, stung, and annoyed by said mosquitoes and other insects that he and his family were caused to contract sickness, chills, fever, and malaria, and were for a long time rendered sick and caused to abandon his crop, and plaintiff was caused to expend large sums of money for medicine and medical attention for himself, and plaintiff avers that he suffered said injuries and consequent damages as a proximate consequence of the negligence of the defendant's agent or servants while acting within the line or scope of their employment as aforesaid.

Amendment: Plaintiff amends count H of his complaint by inserting immediately after the word "Matter," where same first appears in said count, the following words, and that to submerge said logs, stumps, weeds, leaves, and other vegetables with water would cause same to become sickly and unhealthy, and cause breeding places for mosquitoes, and cause odors to permeate plaintiff's home, but to clean away said logs, stumps, brush, leaves, weeds, and other vegetation would cause same to be less liable to become sickly and cause odors and breeding places for mosquitoes.

(L) Plaintiff claims of the defendant the sum of $2,500 as damages for that during the time of the grievances hereinafter complained of plaintiff resided with his family on a piece or parcel of land in Chilton county, Ala., in close proximity to the Coosa river, and plaintiff avers that on or about the month of June, 1914, the defendant by means of a dam across the said Coosa river, down the river from where plaintiff resided with his said family as aforesaid, caused the water of said river to back back, or up, and cover with water a great area of land on each side of said river, and negligently caused large quantities of stagnant water and many smaller pools of stagnant water to be and remain near plaintiff's said residence, and negligently caused large amounts of logs, brush, weeds, leaves, underbrush,

and other vegetation and vegetable matter to be submerged and partially submerged in said water near plaintiff's said residence, and negligently caused same to remain in said water dying, decaying and decomposing, and great quantities of litter, filth, slime, mud, muck, and other debris was thereby negligently caused to accumulate and settle on said lands, so covered with water as aforesaid, and as a proximate consequence of said water becoming and being in the condition described above, great quantities of noxious, odious, and offensive gases, vapors, fumes and odors were caused to be created and generated in and about said water and large amounts of frogs, tadpoles, mosquitoes, and other insects were attracted to, created by, and caused to multiply in and around said body of water and said smaller pools of stagnant water, and died and decayed in and about said water, and plaintiff avers that the defendant has negligently maintained said water in the condition described above, continuously since, to-wit, June, 1914, so close to plaintiff's residence that he and his family have been caused to breathe said noxious and offensive vapors and gases, and to smell said offensive odors continually by day and by night, and have continually been bit, stung, and annoyed by day and by night, and have continually been bit, stung, and annoyed by said mosquitoes and other insects, and his home has continually been permeated with said odors and infested with said insects. And plaintiff avers that as a proximate consequence of plaintiff and his family breathing said impure air and smelling said offensive odors and being bit, stung, and annoyed by said mosquitoes and other insects as aforesaid, plaintiff and his family were caused to contract sickness, malaria, and fever, his home was rendered uncomfortable and unhealthy and uninhabitable, and plaintiff was caused to expend large amounts for medicine and medical attention for himself and family, and was caused to lose much valuable time and to suffer much mental anguish and physical pain to his great damage in the sum of $2,500.

The following, among many other grounds of demurrer, were interposed to these counts:

(114) No facts are set forth which charge this defendant with knowledge or notice that the results which it is alleged followed from the commission of the act complained of would follow.

(123) No facts are alleged which imposed upon the defendant the duty by the exercise of due diligence to have ascertained the facts which it is alleged by due diligence it should have known.

(124) It does not appear the defendant knew that to submerge said logs, brush, stumps, weeds, and other vegetable matter would cause the injuries complained of.

(127) No negligence is charged against this defendant by averring that this defendant knew, or by due diligence should have known, that to submerge the said logs, stumps, brush, weeds, and other vegetable matter with water would cause the injuries complained of, but to clean off the same so that this defendant's land would be reasonably free therefrom would render it less likely to cause the injuries complained of.

Defendant's plea 8 to original and amended complaint is as follows:

(8) That the damages claimed and injuries alleged to have been suffered by the plaintiff arose from the maintenance by this defendant of a dam across the Coosa river in the state of Alabama at the location selected for lock and dam numbered 12 on said river, which dam was constructed and is being operated and maintained by this defendant pursuant to the act of Congress of March 4, 1907, entitled "An Act permitting the erection of a dam across Coosa river, Ala., at the place selected for lock numbered 12 on said river;" which act of March 4, 1907, is in words and figures as follows, to-wit:

"Grant to Alabama Power Company of Right to Build a Dam Across Coosa River at Place Selected for Lock Twelve.

" (Public—No. 247.)

"34 Stat. 1288, c. 2912.

"An act permitting the erection of a dam across Coosa river, Alabama, at the place selected for lock numbered twelve on said river.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the consent of Congress is hereby granted to the Alabama Power Company, a corporation organized under the laws of the state of Alabama, its successors and assigns, to build a dam, of such height as the chief of engineers and the Secretary of War may approve, across the Coosa river in Alabama, at the place selected for the location of lock and dam numbered twelve on said river,

as located in the survey made by the engineers of the United States of the Coosa and Alabama rivers in Georgia and Alabama, in compliance with the requirements of the River and Harbor Act approved June thirteenth, nineteen hundred and two, for the development of water power, and such works and structures in connection therewith as may be necessary or convenient in the development of said power and in the utilization of the power thereby developed: Provided, that plans for the construction of said dam and appurtenant works shall be submitted to and approved by the chief engineers and the Secretary of War before the commencement of the construction of the same: Provided, further, that the Alabama Power Company, its successors or assigns, shall not deviate from such plans after such approval, either before or after the completion of said structures, unless the modification of said plans shall have previously been submitted to and received the approval of the chief of engineers and Secretary of War: Provided, further, that said dam and appurtenant works shall be limited to the use of the surplus water only of the river not required for the navigation of the Coosa river, and that no structure shall be built and no operations conducted under the provisions of this act which shall at any time injure or interfere with the navigation of said river or impair the usefulness of any improvement by the government in the interests of navigation.

"Sec. 2. That the said dam shall be so constructed including a proper forebay, that the government of the United States may at any time construct in connection therewith a suitable lock or locks for navigation purposes, and may at any time, without compensation, control the said dam or other structures and the level of the pool caused by such dam so far as shall be necessary for purposes of navigation, but shall not destroy the water power developed by said dam and structures to any greater extent than may be necessary to provide proper facilities for navigation, and that the Secretary of War may at any time require and enforce, at the expense of the owners, such modifications and changes in the construction of such dam as may be necessary in the interest of navigation: Provided, that the Alabama Power Company, its successors or assigns, shall furnish the necessary electric current, while its power plant is in operation, to move the gates and operate the locks in connection with said dam and to light the United States buildings and grounds free of costs to

the United States: Provided, further, that the Alabama Power Company, its successors or assigns, is hereby granted the right to use any lands which may belong to the United States of America and necessary for the construction and maintenance of said dam and appurtenant works, or which may be inundated with water by reason of the construction of said dam and appurtenant works, and in consideration therefor the said company, its successors or assigns, shall, upon request of the chief of engineers. and the Secretary of War, convey free of cost to the United States of America such suitable tract or tracts of land as may be selected by the chief of engineers and the Secretary of War for the establishment of such lock or locks and approaches and other purposes as the needs of navigation may require.

"Sec. 3.   That this act shall be null and void unless the dam herein authorized be commenced within three years and completed within seven years from the time of the passage of this. act.

"Sec. 4.   The authority herein conferred shall, except as herein specifically provided, be subject in all respects to the provisions of the act entitled 'An act to regulate the construction of dams across navigable waters,' approved June twenty-first, nineteen hundred and six.

"Sec. 5.   The right to alter, amend, or repeal this act is. hereby expressly reserved.

"Approved, March 4, 1907, 10 a. m."

And the defendant avers that it had the right to construct. said dam and now has the right to maintain and operate the same, and the pool of water formed thereby, under said act of Congress of March 4, 1907, which right this defendant now specifically sets up and claims; that the act of Congress approved June 13, 1902 (Act June 13, 1902, c. 1079, 32 Stat. 331) entitled "An act making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors," and known as the River and Harbor Act, contained a provision directing the Secretary of War to cause a survey to be made of the Coosa and Alabama rivers with a view of determining the advisability of securing six-foot navigation in said rivers and the probable expense thereof, said survey to contain a report upon the advisability of further prosecuting the plan for locks and dams in the said Coosa river upon which the United States was. then engaged; that the aforesaid survey of the Coosa river and

Alabama river was duly made by the engineers of the United States by the direction of the Secretary of War in compliance with the said act, and the said engineers submitted their report by which it was provided among other things that such six-foot navigation could be secured from Gadsden, Ala., on the Coosa river to the mouth of the Alabama river, by the erection of locks and dams at certain places, on the Coosa river selected by the said engineers; that thereafter said act of Congress of March 4, 1907, was passed, and under the terms of said act the consent of Congress was granted to this defendant to build a dam of such height as the chief of engineers and the Secretary of War should approve across the said Coosa river at the place selected for the location of said lock and dam numbered 12 on said river as located in the said survey made by the engineers of the United States of the Coosa and Alabama rivers in Georgia and Alabama in compliance with the requirements of the said River and Harbor Act of June 13, 1902; that this defendant is a corporation organized and existing under the general laws of Alabama and has by its charter the right to manufacture, supply and sell to the public power produced by water as a motive force, and this defendant did before this cause of action arose acquire by purchase, and not by condemnation, and still owns fractions B and C of section 19, township 23 north, range 16 east, in Coosa county, Ala., and fractional northeast quarter of section 24, township 23 north, range 15 east, in Chilton county, Ala., constituting a dam site or power site, and comprising not less than one acre of land upon each and opposite sides of said Coosa river, being the place selected for the location of said lock and dam numbered 12 on said river as located in said survey and made by the engineers of the United States and referred to in said act of March 4, 1907; that such dams on the Coosa river were so located by said engineers that slack water pools would be formed over the natural obstructions therein, each such pool having a minimum depth of six feet, each of such dams to be erected with reference to the other, and a lock to be erected around each of said dams for the passage of commerce; that the defendant avers that after the approval of said act of March 4, 1907, it caused plans to be prepared for the construction of said dam and appurtenant works, the dam to be of the height which would raise the waters of said river to the elevation at said dam of 420 feet above set level, according to a datum plane assumed by the engi-

neers of the United States in the said survey of said Coosa river, being an average height above the natural river bed of about 74 feet, and to abut on the east side of said river on said fractions B and C of said section 19, township 23 north, range 16 east, in said county of Coosa, and to abut on the west side of said river in the said fractional northeast quarter of section 24, township 23 north, range 15 east, in said county of Chilton, being the place selected as aforesaid for the location of said lock and dam numbered 12, and duly submitted said plans in accordance with said act to the chief of engineers and the Secretary of War for their approval; that in and by an instrument of date March 3, 1910, the aforesaid plans were duly approved, which instrument of approval is in words and figures as follows, to-wit:

"Whereas, by an act of Congress approved March 4, 1907, entitled, 'An act permitting the erection of a dam across Coosa river, Alabama, at the place selected for lock numbered 12 on said river' (34 Stats. 1288), the Alabama Power Company, a corporation existing under the laws of the state of Alabama, was authorized, subject to the reservations, provisos and conditions of said act, to build a dam of such height as the chief of engineers, United States Army, and the Secretary of War, may approve, across the Coosa river in Alabama, at the place selected for the location of lock and dam numbered 12 on said river, located as described in said act, for the development of water power and such works and structures in connection therewith, as may be necessary or convenient in the development of said power and in the utilization of the power thereby developed;

"And whereas, it was provided that plans for the construction of said dam and appurtenant works shall be submitted to and approved by the chief of engineers, United States Army, and the Secretary of War, before the commencement of the construction of the same; ·

"And whereas, the said Alabama Power Company has submitted, for examination and approval, general plans for a dam proposed to be built across Coosa river, in Alabama, at the site selected for the location of lock and dam numbered 12, as described above, which general plans have been approved by the chief of engineers and recommended for the approval of the Secretary of War, subject to the reservations, provisos and conditions specified in said act of Congress, and also upon, and subject to, the conditions hereinafter specified:

"Now, therefore, this is to certify that the general plans submitted as aforesaid, and which are hereto attached, are hereby approved by the Secretary of War, subject to the reservations, provisos and conditions specified in said act of Congress and upon, and subject to, the following conditions, in addition thereto:

"(I) That a decision as to the location for a lock through the dam itself or in a canal around the end of the dam shall be left open for determination until such time in the future as provision shall be made by Congress for its construction.

"(II) That this approval applies only to the general plans of the structure now presented covering the location, height, and type of dam, and is expressly conditioned upon the use of material and workmanship in actual construction which shall be satisfactory to the Engineer Department, decision as to details of dam and appurtenant works being reserved until plans therefor shall have been formulated and furnished the department for consideration.

"(III) That should the United States in future construct reservoirs on the headwaters of the Coosa river for the benefit of navigation, the company shall pay a just and equitable charge for any increased power created by the reservoirs and utilized by the company.

"(IV) That the work of construction shall be subject to the supervision and approval of the engineer officer of the United States Army in charge of the locality.

"Witness my hand this 3d day of March, 1910.

"J. M. Dickinson, Secretary of War.

"Office, Chief of Engineers, 62225/44, War Department, March 4, 1910."

And the defendant avers that the work of construction at said site, in accordance with such approval plans, was duly commenced and prosecuted by this defendant; that thereafter the defendant submitted supplemental plans for the erection of said dam and appurtenant works to the chief of engineers and the Secretary of War, and by an instrument of date July 8, 1913, the said supplemental plans were duly approved; and in acting upon said plans, the defendant avers that the chief of engineers and the Secretary of War were directed by law to consider the bearing of said dam upon a comprehensive plan for the improvement of said Coosa river, with a view to the promotion of its

navigable quality, and for the full development of water power; the said instrument of approval being in words and figures as follows, to-wit:

"Instrument of approval (No. 2) of supplemental plans submitted by the Alabama Power Company of Alabama for the construction of a dam across the Coosa river in Alabama at the site selected for lock and dam numbered 12:

"Whereas, by an act of Congress approved March 4, 1907, entitled 'An act permitting the erection of a dam across Coosa river, Alabama, at the place selected for lock numbered 12 on said river' (34 St. 1288), the Alabama Power Company, a corporation existing under the laws of the state of Alabama, was authorized, subject to the reservations, provisos and conditions of said act, to build a dam of such height as the chief of engineers, United States Army, and the Secretary of War may approve, across the Coosa river in Alabama at the place selected for lock and dam numbered 12 on said river, located as described in said act, for the development of water power and such works and structures connected therewith as may be necessary or convenient in the development of said power and in the utilization of the power thereby developed;

"And whereas, it was provided that plans for the construction of said dam and appurtenant works shall be submitted to and approved by the chief of engineers, United States Army, and the Secretary of War before the commencement of the construction of the same;

"And whereas, the said Alabama Power Company heretofore submitted for examination and approval general plans for the dam proposed to be built across said river at the said site as described above, which general plans were approved by the chief of engineers and by the Secretary of War, subject to the reservations, provisos and conditions specified in said act of Congress, and also upon and subject to certain special conditions specified in the instrument of approval dated the 3d day of March, 1910; and thereupon the work of construction at the said site, in accordance with the aforesaid approval, was commenced and prosecuted;

"And whereas, further study of the problems connected with the proposed constructions and the experience gained in actual operations have demonstrated the necessity of a modification of the original plans and specifications by new and supplemental

[Burnett v. Alabama Power Co.]

plans of · a general character, which new and supplemental plans are now submitted in accordance with the aforesaid act of · Congress approved March 4, 1907, and with the act of June 23, 1910 (c. 360, 36 Stat. 593 [U. S. Comp. St. 1913, §§ 9976-9983]), entitled 'An act to amend an act entitled "An act to regulate the construction of dams across navigable waters," approved June 21, 1906,' to the Secretary of War and the chief of engineers for · their approval:

"Now, therefore, this is to certify that the said plans now submitted, which are attached hereto, are hereby approved by the chief of engineers and the Secretary of War, subject to the reservations, provisos and conditions specified ·in the said act of Congress approved March 4, 1907, and to the following conditions in addition thereto:

"(1)　That all the 'stipulations and conditions enumerated in the said. instrument of approval of March 3, 1910, shall remain in full force and effect.

"(2)　That the said Alabama Power Company will permit the continuous discharge past said dam of all water flowing in the Coosa river whenever the discharge into the pool created by the dam is 5,000 cubic feet per second or less, and, at all greater discharges into the pool of said dam, shall provide a minimum discharge past said dam of not less than 5,000 cubic feet per second.　The measure of the water thus to be discharges as above specified shall include all the water discharged through any canal, lock, or system of locks that may hereafter be built in connection with said dam.

"(3)　That the said Alabama Power Company shall reimburse the United States for all expenses which have been incurred by the United States in connection with said project, including the cost of any investigations necessary for the approval of the plans, and which may be incurred in connection with the supervision of construction.

"(4)　That the construction, operation and maintenance of this dam and all appurtenant works shall be subject to all pertinent provisions of the act of Congress approved June 23, 1910, entitled 'An act to amend an act entitled "An Act to regulate the construction of dams across navigable waters," approved June 21, 1906.'

"(5)　That the plans hereby approved shall supersede those heretofore approved on March 3, 1910, except with respect to the location, height, and type of dam and power house.

[Burnett v. Alabama Power Co.]

"Witness our hands at the city of Washington this the 8th day of July, 1913.

"Lindley M. Garrison, Secretary of War.
"W. H. Bixby, Chief of Engineers.

"Office, Chief of Engineers, 62225/121, War Department, July 14, 1913."

And the defendant further avers that natural obstructions in the Coosa river exist to a very pronounced degree at and above the place selected by the said engineers of the United States for the location of lock and dam numbered 12, where this defendant did actually erect said dam, but by reason of the erection of said dam the waters of said river have been raised to the level of said dam for a distance of, to-wit, 15 miles, and the desired 6-foot navigation thereby provided over said 15 miles of said river in accordance with the said plans of the engineers of the United States; and the defendant further avers that prior to impounding the waters of said river by said dam it caused surveys to be made to ascertain the land which would be overflowed or damaged by such impounding, and prior to such impounding this defendant acquired by purchase, or by condemnation, all lands or waters or interests or rights or easements in lands or waters likely or liable to be flooded or damaged by impounding or diverting the waters of said Coosa river and its tributaries by the construction of said dam and appurtenant works at said site, except certain lands belonging to the United States, which this defendant was authorized by said act of March 4, 1907, to use for that purpose; and the defendant avers that no part of the lands referred to in the complaint was overflowed or damaged by the waters of said pool, and that said lands referred to in the complaint do not abut on said pool, but other lands owned by T. J. Ponder and G. P. Wilson intervene between said lands and said pool, and that the said lands referred to in the complaint are thereby separated and removed from said pool a distance of, to-wit, 800 feet, and the defendant avers that the damages alleged to have been sustained by the plaintiff cannot be recovered of this defendant because it was authorized in and by said act of Congress of March 4, 1907, to build said dam at said location and of such height as the chief of engineers and the Secretary of War might approve; that in said survey of said Coosa river said engineers of the United States concluded that the general plan of six-foot navigation for said Coosa and Alabama rivers

required the erection of a dam across the Coosa river at the place selected for lock numbered 12, of such height as would raise the waters thereof at said dam to the elevation necessary to secure such six-foot navigation, to-wit, the said election of 420 feet above sea level, thereby requiring a dam at said location of the average height above the natural river bed of about 74 feet, and the defendant prepared its plans upon that basis, which were duly approved, as aforesaid, by the Secretary of War and the chief of engineers, and this defendant proceeded with the erection of said dam in accordance with said plans, at said location, and at the height so fixed as aforesaid, and under the supervision of the engineers of the United States, and the defendant completed the erection of said dam at said location and at the height so fixed, as aforesaid, in accordance with said plans, within the time prescribed by said act, and impounded the waters of said river by said dam, thereby creating the said pool of water as a proximate and natural consequence of the erection of said dam, and the said act of March 4, 1907, reserves the control of said dam and their structures and the level of the pool of water caused thereby, to the government of the United States; and the defendant avers that the erection of the said dam caused the waters of Waxahatchee creek, a tributary of the said Coosa river, and of Crawford branch, a tributary of said Waxahatchee creek, to be backed up said creek and said branch, and on lands of this defendant so acquired for that purpose, thereby submerging or partially submerging the said mud, slime, logs, brush, stumps, bark, weeds, leaves, and other sediment, described in the plaintiff's complaint, and the defendant avers that it also completed the construction of said dam and appurtenant works as aforesaid in accordance with article 19 of chapter 69 of the Code of Alabama 1907, being sections 3627 to 3627 of said Code; and the defendant avers that the Congress of the United States, pursuant to the third clause of section 8 of article 1 of the Constitution of the United States, has power to regulate commerce among the several states, and that pursuant to that power the Congress of the United States passed the several acts before referred to, looking to the opening of said Coosa river for the benefit of commerce among the several states, and the said dam was constructed by this defendant of said height and at the said location in pursuance of the plans and policies of Congress as thus defined in said acts, and that the said dam and the pool of water thereby

created are instrumentalities of the United States in the regulation of commerce among the several states by improving the navigable quality of said Coosa river, and therefore this defendant is not liable for the damages claimed by the plaintiff. (Record, pages 45 to 54, inclusive.)

Defendant's plea 9 to plaintiff's original and amended complaint is as follows:

(9) The defendant adopts all of plea No. 8, to and including the words, "And this defendant acquired by purchase or by condemnation the right to so overflow or damage all of such lands except certain lands belonging to the United States which this defendant was authorized by said act of Congress of March 4, 1907, to use for that purpose;" and adds thereto the following:.

That on, to-wit, the 12th day of February, 1912, the defendant filed its application in the court of probate of Chilton county, Ala., and thereafter filed an amended application in said court, setting up that the defendant was a corporation organized under the laws of this state; that by its charter it had the right to manufacture, supply, and sell to the public power produced by water as a motive force, and had acquired by purchase, and not by condemnation, the said dam site or power site, comprising not less than one acre of land upon each and opposite sides of the Coosa river in the state of Alabama at the said location which was also described in the application; that this defendant proposed to construct a dam across the Coosa river at said site, and thereby impound the waters of and back them up said river and its tributaries for the production of power by water as a motive force, in connection with the construction of a power plant and works connected with or useful to said dam and said power plant for the purpose of manufacturing and selling to the public electric current produced at its said plant, and of selling such power, heat, light or electricity in the manner required by section 3636 of the Code of Alabama, of 1907; and that the uses or purposes for which the lands, rights, waters, interests, and easements in lands or in the waters therein proposed to be condemned and taken were for the uses of manufacturing, selling, and supplying heat, light, power, or electricity produced by the waters impounded and raised by said dam as a motive force to the public, and of selling such heat, light, power, or electricity to any person or persons, municipal or other corporations, in the manner required by section 3636 of the Code of Alabama of

1907; and the petitioner sought in the application, as amended, to condemn the lands and waters therein described which would likely be flooded or covered by the impounded waters or the pool created by the erection of said dam, being those portions of each entire tract of land set out in the several paragraphs of article 4 of said application, and described as follows: That portion, part, or parcel of the lands described in the several paragraphs thereof that would be covered with, as well as those that would be entirely surrounded by, the waters of the Coosa river and its tributaries if raised and backed up to an elevation of 420 feet above a certain datum plane, which elevation of 420 feet was fixed and marked to conform to the elevations established and adopted by the United States above said datum plane in the survey of the Coosa river from lock 4 in Alabama to Wetumpka, Ala., made August 2, 1903, to December 19, 1903, under the direction of J. B. Cavanaugh, Corps of Engineers, U. S. A.," and by D. M. Andrews, Assistant Engineer, and by N. A. Yuille, Chief of Party, which said established elevation by the United States are evidenced and fixed by bench marks or other elevation data marked on the left or east side of said river; and in paragraph 17 of said article 4 as amended this defendant described the following lands and alleged the same to be owned by T. J. Ponder and G. P. Wilson, to-wit:

Paragraph 17: "The southwest quarter of the northwest (S. W. ¼ of N. W. ¼) and the northwest quarter of the northwest quarter (N. W. ¼ of N. W. ¼) that lies south and west of Waxahatchee creek, section 34; the northeast quarter of the northeast quarter (N. E. ¼ of N. E. ¼) that lies west of Aiken branch and south of Waxahatchee creek, section 33.; the south half of the southeast quarter (S. ½ of S. E. ¼), the southeast quarter of the southwest quarter (S. E. ¼ of S. W. ¼), the north half of the southwest quarter (N. ½ of S. W. ¼), the south half of the northwest quarter (S. ½ of N. W. ¼) and the northwest quarter of the northwest quarter (N. W. ¼ of N. W. ¼) that lies south and west of Waxahatchee creek, section 28; all of the north half of the northeast quarter (N. ½ of N. E. ¼) that lies south of Waxahatchee creek, section 29; all of the southwest quarter of the southeast quarter (S. W. ¼ of S. E. ¼), the south half of the southwest quarter (S. ½ of S. W. ¼), the northwest quarter of the southwest quarter (N. W. ¼ of S. W. ¼), and the southwest quarter of the northwest quarter (S. W.

¼ of N. W. ¼), that lies south and west of Waxahatchee creek, section 20; all of the east half of the northeast quarter that lies south and west of Waxahatchee creek, section 19; all in township 24 north, range 15 east, Chilton county, Alabama."

And this defendant in said proceeding did also seek to acquire the lands and interests or easements therein that would be injured or damaged as a consequence of so impounding, raising, and diverting the waters of said river and its tributaries and so backing said waters upstream by said dam, the maintenance thereof and the pool created thereby; and this defendant in said amended application proposed to take and condemn the lands and water therein described for the purposes therein named, and sought to construct said dam and to acquire the right thereby to back and impound waters over said lands for said purposes, and also sought to condemn the right to so back and impound said waters of said Coosa river and its tributaries over, on, and across said lands by said dam, and to maintain said dam and said waters so raised or impounded, for the purpose therein named, and applied to said court for an order of condemnation of said lands, waters and rights to such uses; that notice of such application and of the day for the hearing thereof was duly issued out of said court of probate to said T. J. Ponder and G. P. Wilson, and served upon them by a sheriff of the state of Alabama as required by law; and the said cause having been duly considered, the said court granted said application by its decree of date December 30, 1912, did order, adjudge, and decree that this defendant was entitled to the relief prayed in said petition and to the lands and waters and rights and interests therein described, and did condemn the same to the use of the petitioner, and appointed commissioners to assess damages and compensation to which the owners were entitled, including the lands described in said paragraph 17; and the defendant avers that a notice of the appointments duly issued to said commissioners as required by law, directing them to assess the damages and compensation to which the said T. J. Ponder and G. P. Wilson, owners of said described lands, were entitled on account of any injuries that might result to them by reason of this defendant's taking and condemning the said lands and waters, and by flooding, backing or raising the waters of the Coosa river and its tributaries over and on said lands, and also the injuries and damages resulting as a consequence of so impounding, raising

and diverting the waters of said Coosa river and its tributaries, and so backing the waters up by said dam; and said commissioners duly made their assessments of damages for the owners of said lands including an assessment of $3,000 for said T. J. Ponder and G. P. Wilson as the owners of the lands described in said paragraph 17, and returned such assessment to said court; that thereupon it appearing to said court of probate that this defendant had deposited in said court said damages and compensation of $3,000 so ascertained and assessed by said commissioners for said T. J. Ponder and G. P. Wilson, together with all the costs of the cause the said court of probate of Chilton county, did by its decree of January 13, 1913, duly confirm the report of said commissioners, and did order, adjudge, and decree that the lands and waters, and the rights, interests, and easements prayed for in said amended petition, and granted and condemned in said decree of December 30, 1912, in said cause, be condemned, granted, and awarded to this defendant with the rights and for the uses and purposes set forth in said amended petition and in said former decree of December 30, 1912, and that all right, title, and interest prayed for in said petition as amended, and so condemned, granted, and awarded in and by said former decree, and in and by said decree of January 13, 1913, be and was thereby divested out of the said owners as to the said lands described in said paragraph 17 and vested in this defendant; that said T. J. Ponder and G. P. Wilson did thereupon appeal to the circuit court of said county of Chilton from said order of condemnation of said court of probate, and said T. J. Ponder and G. P. Wilson did thereafter dismiss their said appeal out of the said circuit court, leaving said order of condemnation in full force and effect, and the same still remains unreversed and in full force and effect; and the defendant attaches a copy of said condemnation on proceedings to this plea as a part thereof, making the same Exhibit A.

And this defendant avers that it completed the construction of said dam and appurtenant works as aforesaid in accordance with the provisions of article 19 of chapter 69 of the Code of Alabama of 1907, being sections 3627 to 3637 of said Code, and the said dam is therefore a dam authorized by the Legislature of the state of Alabama at the particular site so selected as aforesaid, and of the specific height and dimension so determined upon as aforesaid; that at the time said condemnation proceed-

ing was instituted said Ponder and Wilson also owned the south-east quarter of the northeast quarter of section 29, township 24 north, range 15 east, in said county of Chilton, which land was immediately adjoining the following lands described in said application, to-wit: The north half of the northeast quarter of said section 29, and the west half of the northwest quarter of section 28 in said township 24 north, range 15 east, also owned by said Ponder and Wilson; that the plaintiff purchased the said southeast quarter of the northeast quarter of said section 29 from said T. J. Ponder and G. P. Wilson after said condemnation proceeding was so instituted and after said lands were so condemned by the aforesaid decree of said court of probate of Chilton county, and the plaintiff was residing on said land so purchased by him at the time he suffered the alleged injuries described in the complaint; that the said land on which the plaintiff so resided and said immediately adjoining lands described in said application constituted part of one entire tract of land owned by said Ponder and Wilson, and were so used by them, as parts of one and the same tract for farming purposes, at the time said condemnation proceeding was commenced; and the defendant avers that the erection of the said dam caused the waters of Waxahatchee creek, a tributary of the said Coosa river, and of Crawford branch, a tributary of said Waxahatchee creek, to be backed up said creek and said branch, and on part of said north half of said northeast quarter of said section 29 and part of said west half of the northwest quarter of said section 28, thereby submerging or partially submerging the said mud, slime, logs, brush, stumps, bark, weeds, leaves, and other sediment described in the plaintiff's complaint; and the defendant avers that it proceeded with and completed the construction of said power plant in connection with said dam, and thereafter acquired rights of way on which it constructed a system for the transmission and distribution of electric power produced at said dam site by the waters of said Coosa river as a motive force, which system is now and has been for some time past in operation, and the defendant is engaged in generating at said plant and selling through said system electric power to the public; that this defendant is therefore a public service corporation under the laws of the state of Alabama, and is obligated to manufacture and sell to the public electric current so produced at its said plant in the manner required by section 3636 of the Code

of Alabama of 1907; wherefore this defendant avers that the damages alleged to have been sustained by the plaintiff cannot be recovered of this defendant because it was authorized in and by said act of Congress of March 4, 1907, to build said dam at said location and of such height as the chief of engineers and the Secretary of War might approve; that in the said survey of said Coosa river said engineers of the United States concluded that the general plan of six-foot navigation for said Coosa and Alabama rivers required the erection of a dam across the Coosa river at the place selected for lock numbered 12 of such height as would raise the waters thereof at said dam to the elevation necessary to secure such six-foot navigation, to-wit, the said elevation of 420 feet above sea level, thereby requiring a dam at said location of the average height above the natural river bed of about 74 feet, and the defendant prepared its plans upon that basis, which were fully approved, as aforesaid, by the Secretary of War and the chief of engineers, and this defendant proceeded with the erection of said dam at said location and at the height so fixed as aforesaid, under the supervision of the engineers of the United States, and the defendant completed the erection of said dam at the said location at the height so fixed, as aforesaid, within the time prescribed by said act, and impounded the waters of said river by said dam, thereby creating the said pool of water as a proximate and natural consequence of the erection of said dam, and the said act of Congress of March 4, 1907, reserves the control of said dam and other structures and the level of the pool of water caused thereby, to the government of the United States; and the defendant avers that the Congress of the United States pursuant to the third clause of section 8 of the Constitution of the United States has power to regulate commerce among the several states, and that pursuant to that power Congress of the United States passed the several acts before referred to, looking to the improvement of said Coosa river for the benefit of commerce among the several states, and the said dam was constructed by this defendant of said height and at the said location in pursuance of the plans and policies of Congress as thus defined in said acts, and of the statutes of the state of Alabama in such cases made and provided, and that the said dam and the pool of water thereby created are instrumentalities of the United States in the regulations of commerce among the several states by improving the navigable quality of said Coosa river, and therefore this defendant is not liable for the damages claimed by the plaintiff.

[Burnett v. Alabama Power Co.]

ACUFF & PITTS, and MIDDLETON & REYNOLDS for appellant.
THOMAS W. MARTIN, PERCY, BENNERS & BURR, O. R. HOOD and
KNOX, ACKER, DIXON & STEWART for appellee.

ANDERSON, C. J.—(1) While count B of the complaint
charges that the defendant negligently caused logs, brush, etc.,
to be and remain upon the lands, and also caused the same to be
negligently submerged by water, thus producing the injuries,
etc., it is not a claim for two separate and distinct causes of
action in the same count.   The defendant owed the plaintiff no
duty to keep its own land clear of brush, logs, and other vege-
tation, as having the same upon the land was but the lawful
use of its own property, and the said count does not indicate that
the conduct of the defendant in this respect would have produced
the injury described but for the fact that the land upon which
this matter existed was submerged by water by means of a
dam across Coosa river.   Therefore the negligent submerging
of the land is the gravaman of the action, and was the proxi-
mate, intervening cause which produced the injuries.

(2) Indeed, the count charges that the injuries resulted as
the proximate consequence of the defendant's causing said water
to remain so near plaintiff's residence as aforesaid.   The grava-
men of the action was negligently submerging the land, under
the condition described, "by means of a dam."   The count does
not attempt to set up the acts constituting negligence, but de-
scribes the conditions, and charges generally a negligent sub-
merging of the land by means of a dam across the Coosa river,
and this general averment of negligence seems to be sufficient
under our system of pleading.   Count B was not subject to the
defendant's demurrer.   It, in effect, charges results to be due
to the backing of the water by the negligent, or wrongful, con-
struction of a dam across the Coosa river.

(3) As above noted, the defendant had the lawful right to
have logs, brush, and other vegetation on its own land, and
whether it did so negligently or not matters not, as its motive
would produce no cause of action.   "It is damnum absuque in-
juria also if through the lawful and proper exercise by one man
of his own rights damage results to another, even though he
might have anticipated the result and avoided it.   That which
it is right and lawful for one man to do cannot furnish the
foundation for an action in favor of another.   Nor can the ab-
sence of commendable motive on the part of the party exercising

[Burnett v. Alabama Power Co.]

his rights be the legal substitute or equivalent for the thing amiss which is one of the necessary elements of a wrong."—Cooley on Torts, p. 142. Therefore the proximate cause of the injury, and the only theory upon which the count states a cause of action, was the negligent or wrongful backing of the water by means of the dam, and not in permitting the logs, etc., to be and remain upon the land. The vegetation on the land merely produced a condition, and the proximate intervening cause of the results was negligently backing the water.—Cooley on Torts, p. 99; *Garrett v. L. & N. R. R.*, 196 Ala. 52, 71 South. 685; *Huntsville Knitting Mill v. Butner,* 198 Ala. 528, 73 South. 907.

(4) There seems to be an exception to the rule, when the original act was wrongful and was naturally, according to the ordinary course of events, calculated to prove injurious to some other person or persons and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause passing by those which were innocent.—Cooley on Torts, p. 101. Here the original conduct was not wrongful and the plaintiff must rely, not only upon the conduct which was the proximate cause of the injuries, but the only wrongful conduct charged, the negligent backing of the water by means of the dam.

(5) Count H, as amended, seems to be an adroit attempt to avoid the principles of law governing counts B and L by an effort to put the cart before the horse. It charges the negligent permitting of the logs, etc., to be and remain upon the land, with a knowledge that injuries would arise by having the same submerged by water, but avers that the defendant had the authority to back said water. The count shows that the injuries would not have arisen but for the backing of the water, and concedes that the defendant had the authority to back the water. While the count avers that it became the duty of the defendant to remove the vegetation, as matter of law, it was not its duty to do so independently of backing the water, and if there is any cause of action against the defendant, it must be for doing the thing which proximately caused the injury, and as the count shows authority for this and does not charge that the water was negligently backed so as to submerge the logs, etc., it was defective and subject to the defendant's demurrer.

(6) Count L is quite similar to count B, as it charges that by means of the dam the defendant negligently caused the water to

back, thus producing the injuries set forth. This is a general averment of negligently doing the thing, by means of a dam, and the dam must, of course, have been negligently, or wrongfully constructed or maintained in order for the plaintiff to establish the negligence charged.

(7, 8) The counts to which pleas 8 and 9 were held to be good involve no injury to property which is protected by section 235 of the Constitution because of injury resulting from the construction, etc., of the dam, but claim consequential damages caused subsequent to the construction of same and to the person instead of the property.—*Hamilton v. Ala. Power Co.,* 195 Ala. 438, 70 South. 737. Therefore said pleas are a complete defense to said counts. They, in effect, set up that the things complained of resulted from backing the water, by the construction of a dam across a navigable river, which was constructed by it, as a governmental agency, in the aid of navigation, under the law, federal and state, and in strict compliance with the plans and specifictions required by the government. This not only relieved the defendant from the creation or maintenance of a nuisance, but the act being lawful in itself, and having been performed in strict compliance with scientific government specifications and requirements, there could be no negligence in doing the thing so sanctioned and which was the proximate cause of the damages claimed. This being true, the defendant could only be liable for injuries to property, as protected by the federal and state Constitutions, and which has been correctly discussed and declared in the *Hamilton Case, supra.* It is settled in England and Canada, as well as by the weight of authority in the United States, that there can be no recovery for damages, or relief from consequences, incidentally resulting from acts or things performed or conducted in a proper manner under legal authority, and which but for such legislation would constitute a nuisance. —*Rainey v. Red River R. R. Co.,* 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580, and note; *Fisher v. Seaboard R. R. Co.,* 102 Va. 363, 36 S. E. 381, 1 Ann. Cas. 622, and note. The sovereign controls navigable streams, and the riparian owner as well as subjects generally acquire rights subject to the right of the sovereign to control said streams and to make and authorize all reasonable improvements, from time to time, to facilitate the use of the river by the public, even though the landowner thereby

362                         SUPREME COURT                        [Vol.

suffers inconvenience or loss, so long as none of his property is taken or injured in violation of his constitutional rights. As the manner in which improvements may be made, in aid of navigation, is a question within the discretion of the government, unless some constitutional rights is invaded, there can be no liability for consequential damages to the citizens as an incident to said improvement, and such injury is damnum absque injuria.—*Brooks v. Cedar Brook Co.*, 82 Me. 17, 19 Atl. 87, 7 L. R..A. 460, 17 Am. St. Rep. 459; *Bedford v. United States*, 192 U. S. 217, 24 Sup. Ct. 238, 48 L. Ed. 414; *Gibson v. U. S.*, 166 U. S. 275, 17 Sup. Ct. 578, 41 L. Ed. 996. It might be that prudence would have suggested the removal of logs, brush, etc., from the land before the submerging of same by water, but the government, having at all times the welfare, comfort, health, and happiness of its subjects in mind, may not have deemed it necessary or prudent to have it done, and it was supreme, as to the location of the dam and as to all plans and specifications as well as other things in connection with the construction of the same, so long as no constitutional right was invaded. As the government had the authority to construct the dam, it could delegate this river improvement to another, and if its requirements as to construction were complied with by the agent, there could be no liability against the said agent.—*Brooks' Case, supra; Nor. Trans. Co. v. Chicago*, 99 U. S. 635, 25 L. Ed. 336. Had the act of Congress or the government plans and specifications required clearing the land of the matter in question, as a condition precedent to the constructing of the dam and raising the water, this defendant might not only be guilty of negligence, but also liable as for the creation or maintenance of a nuisance, for the reason that it did not comply with the requirements of the legal authority under which it acted; but as these pleas set up the acts of Congress, the Alabama statute and the government plans and specifications, and aver a strict compliance therewith, as the proximate cause of the things complained of by the plaintiff, they make out a complete defense to the action. Indeed this question was practically settled in the *Hamilton Case, supra*, where it was said: "In the discussion of the general principles involved in this case and in reaching the conclusion that the bill does not contain equity, we did not intend to hold or intimate that this complainant could be liable in an action at law as for consequential damages, other than to property, which resulted

[Burnett v. Alabama Power Co.]

from the erection or extension of its words, the bill negatives a nuisance, and also sets up that the dam was constructed under the authority of Congress and in strict compliance with the federal law, and for the benefit of navigation, and that to all intents and purposes this complainant was a governmental agency in the construction and maintenance of the dam. This being true, there could be no liability upon the part of the government as for consequential damages, except to property, resulting from conditions caused by the construction and maintenance of the dam, and this complainant would be equally protected, and if it constructed the dam in compliance with the law it could not be guilty of negligence in causing the backing of the water. If it did what the law authorized, and proceeded under the rules prescribed, it could not be guilty of negligence so as to render it liable for resulting consequential damages.—*Bedford v. United States,* 192 U. S. 217, 24 Sup. Ct. 238, 48 L. Ed. 414; *United States v. Lynah,* 188 U. S. 445, 23 Sup. Ct. 349, 47 L. Ed. 539. On the other hand, the legal authority for the construction and maintenance of the dam, by the government or by this complainant, does not afford an exemption from damages for taking property as protected under the federal Constitution, or for taking property, or consequential damages thereto, under the state Constitution.—*Chicago v. Taylor,* 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638."

Much of the appellant's argument attacks the soundness of the principles announced in the *Hamilton Case, supra,* but we think that said case is sound, and are not inclined to depart therefrom.

While this case must be reversed because of the error in sustaining the demurrer to counts B and L, it is not improper to suggest as a guide upon the next trial that pleas 8 and 9 set up a good defense to said counts B and L.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

MAYFIELD, SAYRE, SOMERVILLE, and THOMAS, JJ., concur.

MCCLELLAN, J., concurs in the opinion, except as to counts B and L. He thinks said counts bad, and that the case should be affirmed.

[Burnett v. Alabama Power Co.]

GARDNER, J.— (concurring in result).—I concur in that part of opinion holding counts B and L not subject to demurrer, and therefore concur in reversal of the cause. I do not agree, however, to construction given these counts in opinion, to the effect that the building of the dam can be said to be the proximate cause of the injuries alleged, but think the counts show that the proximate cause was the backing of the water upon accumulated debris and vegetable matter, the backing of the water on the land in its then condition, which was alleged to be negligently done. So construing these counts, I, therefore, cannot concur also in that part of the opinion holding pleas 8 and 9 complete answers to the cause of action set forth in said counts B and L.

McCLELLAN, J.—In my opinion counts B and L proceeded on the theory that the defendant negligently exercised its lawful right in doing the things described therein; and that these counts did not undertake to state a cause of action as for a nuisance, as was the case of *Hosmer v. Republic I. & S. Co.*, 179 Ala. 415, 60 South. 801, 43 L. R. A. (N. S.) 871, and *Ogletree v. McQuaggs,* 67 Ala. 580, 42 Am. Rep. 112. The purpose in these counts being to state a case of negligence with respect to the exercise of a lawful right, the sufficiency of these counts as against demurrer were and are due to be determined with respect to their sufficiency to state a cause of action in such circumstances, rather than by tests which would be serviceable in determining the sufficiency of counts purporting to state a cause of action because of damnifying consequences resulting from a nuisance.—29 Cyc. p. 1155; *Town of Vernon v. Wedgeworth,* 148 Ala. 490, 42 South. 749. The trial court was, in my opinion, correctly advised when it sustained the demurrers to these counts, particularly grounds 114, 123, 124, and 127.

In other respects I concur in the foregoing opinion. But my conclusion would lead to an affirmance of the judgment.