These four cases were consolidated for appeal following a grant of summary judgment in each case in favor of the defendant, Alabama Power Company (APCo). We affirm.
The question presented for review is whether APCo, when it operates its hydroelectric dams in accord with the Federal Power Commission license and the Department of Army regulations, is liable in an action for damages for negligence, trespass and/or nuisance.
The trial court's lengthy order in each of the four cases sets out the following summary of undisputed facts:
 "1. On April 11, 1979, there occurred a rainfall event in the vicinity of the Coosa River which caused major flooding throughout the Alabama-Coosa River Basin. This flooding continued until April 21, 1979, at which time the river was restored to its normal elevation (Plaintiffs' Complaints; Depositions of Plaintiffs; and Perry Affidavit).
 "2. The plaintiffs' property which is involved in this litigation is located between Lay Dam and Mitchell Dam on Mitchell Reservoir. It is undenied for the purposes of the Motion for Summary Judgment that the plaintiffs' property flooded commencing on April 12, 1979, and peaking on April 13, 1979. Thereafter, the water elevation on Mitchell Reservoir began subsiding (Plaintiffs' Complaints; Depositions of Plaintiffs; and Perry Affidavit).
 "3. The permanent power pool elevation of Logan Martin Reservoir at the dam is 465 feet above mean sea level (msl) (Drago Deposition, Ex. 6). In addition, the Company acquired a storage easement to elevation 473.5 at the dam (Defendant's Answer to Plaintiffs' Interrogatory No. 42).
 "4. The property where the plaintiffs are located on Mitchell Reservoir contains no storage easement as Mitchell Dam is a `run of the river' dam (Perry Affidavit and Defendant's Answers to Plaintiffs' Interrogatories No. 25, 27 and 39).
 "5. During the period April 11, 1979 until April 21, 1979, the rate of outflow at Mitchell Dam was in excess of the rate of inflow into Mitchell Reservoir from Lay Reservoir; in other words, Mitchell Dam was passing more water than Lay Dam was discharging (Perry Affidavit).
 "6. During the period of time April 1 through April 30, 1979, the operations by Alabama Power of its hydroelectric dams along the Alabama-Coosa River Basin were in compliance with the Flood Control Plan of the United States Army Corps of Engineers as specified in the regulations issued by the Department of the Army. (Perry Affidavit; Drago Deposition and Affidavit; and Defendant's Answers to Plaintiffs' Interrogatories No. 44, 62 and 84 (b)).
 "7. During the above referred to period, all inflows and outflows of water at Project 2146 were in accordance with the Flood Control Plan which controls reservoir levels, gate openings and discharges to effectuate the overall flood control measures of the entire Alabama-Coosa River System. (Perry Affidavit; Drago Deposition and Affidavit; and Defendant's Answers to Plaintiffs' Interrogatories No. 44, 62 and 84 (b)). *Page 1244 
 "8. As part of the reservoir regulation manual for Logan Martin Reservoir, there is incorporated an induced surcharge curve which is a graph specifying, during initial periods of flooding, the amount of water which Alabama Power can release from Logan Martin Reservoir during such flooding conditions. On April 12, 1979, the day before the flooding of the plaintiffs' property, the inflow of water into Logan Martin Reservoir, together with its then present elevation, required Logan Martin to begin operating under the induced surcharge curve pursuant to the Corps of Engineers Flood Control Plan. At this point, all discharges from Logan Martin Reservoir into Lay Reservoir, and thereafter from Lay Reservoir into Mitchell Reservoir, were controlled by the induced surcharge curve at Logan Martin Reservoir in order to minimize the flooding effects along the entire Coosa River Basin. (Perry Affidavit; Drago Deposition and Affidavit; and Defendant's Answers to Plaintiffs' Interrogatories No. 44, 62 and 84 (b)).
 "9. The induced surcharge curve for Logan Martin Reservoir was designed so that the peak discharge from the dam during major floods would not be any greater than would have occurred under natural conditions. In other words, by following the Army's Flood Control Plan during major flooding, the effect of the flooding will not be greater than that which would have occurred in the absence of the dam. During periods of minor and moderate floods, such operations will reduce significantly the downstream flood peaks. (Drago Deposition; and Defendant's Answers to Plaintiffs' Interrogatories No. 67 and 84).
 "10. The storage easement acquired by Alabama Power for Project 2146 was authorized and approved by the Federal Power Commission. (Byar's Affidavit).
 "11. The amount of storage easement acquired by Alabama Power on any particular reservoir does not affect in any manner the flood control on that reservoir, or the elevation of such a reservoir during times of flooding. (Drago Deposition).
 "12. Essentially all of the property owners located on Mitchell Reservoir were flooded on April 13, 1979. (Plaintiffs' Depositions)."
Plaintiffs/appellants contend that the trial court erred in granting APCo's motions for summary judgment in these cases. They claim that they are entitled to recover under three alternative theories; namely, (1) that APCo acted negligently in the operation of its dams; (2) that APCo trespassed upon plaintiffs' property by backing flood waters upon such property; and (3) that APCo, in the operation of its dams and reservoirs, created a private nuisance. We cannot agree.
 THEORY OF NUISANCE
We first address plaintiffs' count claiming nuisance. The trial court took judicial notice of the fact that the entire Mitchell Reservoir area as well as the upstream and downstream areas of the Alabama-Coosa River Basin were affected by the flooding complained of. It was undisputed that essentially all the property owners located on Mitchell Reservoir were flooded on April 13, 1979. Accordingly, we agree with the trial court that plaintiffs' count for private nuisance is barred by Code of 1975, § 6-5-121, which provides:
 "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured."
In addition this Court in Burnett v. Alabama Power Co.,199 Ala. 337, 74 So. 459 (1917), dealt with whether or not APCo's operation of its dams across a navigable waterway constituted a nuisance. In holding inter alia that APCo was not liable for flood damages, this Court stated: *Page 1245 
 "[The defenses of Alabama Power Company], in effect, set up that the things complained of resulted from backing the water, by the construction of a dam across a navigable river, which was constructed by it, as a governmental agency, in the aid of navigation, under the law, federal and state, and in strict compliance with the plans and specifications required by the government. This not only relieved the defendant from the creation or maintenance of a nuisance, but the act being lawful in itself, and having been performed in strict compliance with scientific government specifications and requirements, there could be no negligence in doing the thing so sanctioned and which was the proximate cause of the damages claimed. . . . As the government had the authority to construct the dam, it could delegate this river improvement to another, and if its requirements as to construction were complied with by the agent, there could be no liability against the said agent. . . ." 199 Ala. at 361-62, 74 So. 467-68.
Finally, it is uncontroverted that APCo operated its dam in accordance with the Department of the Army's flood control plan in adhering to the induced surcharge curve. Therefore, the damages were not caused, in fact, by any act of APCo. The undisputed facts show that "by following the Flood Control Plan during major flooding, the effect of the flooding will not be greater than that which would have occurred in the absence of the dam."
 THEORY OF TRESPASS
The trial court in addressing plaintiffs' count of trespass discussed at length the basis of recovery for damages under a claim by an upper riparian landowner and also under a claim by a lower riparian owner. We agree with this discussion and in our view summary judgment was properly granted on this count. It was undisputed that the outflow of Mitchell Dam was in excess of the rate of flow into Mitchell Reservoir from Lay Dam. The ultimate effect was that Mitchell Dam was mitigating the effects of the discharge from Lay Dam rather than aggravating the same.
In order for an upper riparian owner to recover damages for trespass, he must establish that not only did the dam backwaters upon the plaintiffs' land, but moreover, that under the general definition of trespass such an action was unlawful or wrongful. Cox v. Stuart, 229 Ala. 409, 157 So. 460 (1934);Aiken v. McMillan, 213 Ala. 494, 106 So. 150 (1925); Black'sLaw Dictionary, p. 1347 (Rev. 5th ed. 1979). Plaintiffs have failed to produce such evidence. APCo contends, and we agree, that plaintiffs in this case more accurately fall into the category of lower riparian owners. The law in Alabama is clear than an action which asserts liability for damages for the release of water will not lie in the absence of negligence. This Court has consistently held that one who owns or operates a dam owes a duty to lower riparian owners only to exercise reasonable care in operating or maintaining the dam. MontgomeryLight Water Power Co. v. Charles, 258 F. 723 (M.D.Ala. 1919);Sloss-Sheffield Steel Iron Co. v. Wilson, 183 Ala. 411,62 So. 802 (1913). The burden in this case was on plaintiffs to prove that the dam operator acted in a negligent manner and that such negligence caused the damage. Plaintiffs failed to establish negligence on the part of APCo and to overcome the causation obstacle that the construction and operation of the dams during the period in question did not result in any water flow being greater than would have occurred under natural conditions.
 THEORIES OF NEGLIGENCE
Plaintiffs claim that APCo negligently operated its dams and that APCo negligently failed "to exercise its power of eminent domain to purchase or condemn a sufficient easement" for hydroelectric purposes. The trial court's order states that
 "it is clearly uncontroverted from the deposition and affidavit of John S. Drago, Chief of Reservoir Control and Meteorology Section of the Mobile Engineer District of the United States Army Corps of *Page 1246 
Engineers, together with the answers to the plaintiffs' interrogatories, that the purpose of the Flood Control Plan is to decrease the flow of water from one dam into a downstream reservoir. In addition it is uncontroverted that during all times pertinent to the issues raised by the Complaint, Alabama Power Company acted in strict compliance with the Corps of Engineers Flood Control Plan. And finally, having acted in accordance with such a Plan, the flooding which resulted to any downstream riparian owners was no worse than would have occurred in the absence of such dams. . . ."
This Court in Law v. Gulf States Steel Co., 229 Ala. 305,156 So. 835 (1934), held that a plaintiff cannot recover if the flood waters of a reservoir reached such a height that the plaintiffs' property would have been destroyed even if the dam did not exist.
We agree with the trial court's finding that plaintiffs failed to meet the burden of proof of negligence on behalf of APCo. The depositions and answers to interrogatories by the plaintiffs do not contain a scintilla of evidence in support of such a conclusion. Further, even assuming arguendo that there was a showing of negligence on the part of APCo, there was no showing by plaintiffs that this negligence proximately causedin fact the damage to their property (i.e. that absent the dams their property would not have been flooded to the same extent or perhaps more so).
As to the plaintiffs' claim that APCo negligently failed to exercise its right of eminent domain by acquiring additional flood easement, plaintiffs cite no proposition of law which holds that a utility has such a duty to a landowner. The trial court's order refers to Mr. Drago's deposition in stating that "the amount of easement acquired and the operation of a dam for flood control purposes are not related." He testified that only the "rain and the flow of the river" cause flooding, and that the amount of easement acquired would not have affected the elevation of the river on April 13, 1979, and the resulting property damage. Finally, the Federal Power Commission authorized and approved the amount of the easement acquired on certain of Alabama Power's reservoirs. For this reason and the other reason stated, APCo would be clearly exonerated from liability under the theories of negligence claimed by plaintiffs.
The defendant, APCo, has met the burden in these cases of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 56, A.R.Civ.P.; Kutack v. Winn-Dixie Louisiana, Inc.,411 So.2d 137 (Ala. 1982); Bryant v. Morley, 406 So.2d 394 (Ala. 1981). Our review of the record convinces us that the trial court correctly granted summary judgment. That judgment, therefore, must be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.