## BEDFORD *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 23. Argued December 9, 1903.—Decided January 18, 1904.

Damages to land by flooding as the result of revetments erected by the United States along the banks of the Mississippi River to prevent erosion of the banks from natural causes are consequential and do not constitute a taking of the lands flooded within the meaning of the Fifth Amendment to the Federal Constitution. *Gibson* v. *United States*, 166 U. S. 269, followed; *United States* v. *Lynah*, 188 U. S. 445, distinguished.

THE appellants were owners of land on the Mississippi River, in the State of Louisiana, amounting to five thousand or six thousand acres, upon which were cabins, other buildings and fences. They brought suit in the Court of Claims for damages to their lands, alleged to have resulted from certain works of the United States. The damages consisted, as found by the court, of the erosion and overflow of about twenty-three hundred acres of the land. The works of the government and their operation are described by the court in the following findings:

"Prior to the spring of 1876 the Mississippi River flowed

around a narrow neck of land known as De Soto Point, and in going around this point flowed by the city of Vicksburg in a southwesterly direction. In the spring of 1876 De Soto Point became so narrow by erosion that the river broke through, leaving De Soto Point as an island, thereby shortening the distance of the stream about six miles, and taking its course immediately to the south with great velocity against the Mississippi bank at what is known as the cut-off of 1876. The result was that the city of Vicksburg was left some miles away from the main channel of the river, and the old channel in front of the city was continually filled up, making the approach from the river to the docks along the river difficult, if not impossible.

"Between 1878 and 1884 the United States constructed about 10,700 feet of revetment along the banks of the Mississippi River at Delta Point, Louisiana, for the purpose of preventing the further erosion of that point. The revetment consisted of willow mattresses weighted down by stones, and were placed on said banks below high-water mark. The revetment was neither upon nor in contact with the claimants' lands. The object of the construction was to prevent the navigable channel of the river from receding farther from the city of Vicksburg, which had been left some distance from the main channel of the river by the cut-off of 1876, as aforesaid. The revetment was repaired slightly in 1886 and 1889, and more extensively in 1894, all of which work was paid for from time to time out of the appropriations made therefor by Congress, as found in 20 Stat. 363, 366; 21 Stat. 181, 470; 26 Stat. 450, 1116.

"In making the improvement aforesaid the defendants did not recognize any right of property in the claimants in and to the right alleged to be affected, and did not assume to take private property in and by the construction of the revetment, but proceeded in the exercise of a claimed right to improve the navigation of the river.

"After the cut-off at De Soto Point in 1876 and the construction of the revetment, as aforesaid, the channel and cur-

rent of the Mississippi River were gradually directed toward the lands of the claimants, situated about six miles below said cut-off, and did, about the year 1882, reach said lands and thereafter erode and overflow about 2,300 acres of their lands, which overflow has ever since continued. About 400 acres of their lands so eroded and overflowed was prior to the death of said George M. Bedford, through whom the claimants claim title, and about 900 acres of which were overflowed thereafter and prior to said judicial sale, and the residue after said sale. Of the lands so overflowed about 1,300 acres thereof were cleared and in cultivation, of which about 700 acres were so cleared prior to May 2, 1895.

"The damage to the claimants, and each of them, by reason of the washing away of their lands during their respective ownership, as aforesaid, is in excess of $3,000.

"The cause of the deflection of the river upon the claimants' land was the cut-off, which shortened the distance of the stream six miles, and thereby increased the velocity of the current, and forced the current to turn, when it struck the Mississippi bank, at an abrupt angle. The revetment did not change the course of the river as it then existed, but operated to keep the course of the river at that point as it then was. If the revetment had not been built the cut-off would have continued to widen toward the Louisiana bank, and the channel would have continued to move in the same direction. With the widening of the cut-off and the shifting of the channel the angle of the turn below the cut-off would have gradually become less abrupt, and the deflection of the stream upon the claimants' land would have grown less, and the consequent injury to the claimants' land would have been decreased. To what extent the injury would have been decreased is conjectural. The injury done to the claimants' lands was an effect of natural causes; the injury caused by the government was by interrupting the further progress of natural causes, i. e., the further change in the course of the river, and is also conjectural."

The court deduced from the facts that the claimants were

not entitled to recover, and dismissed their petitions.   36 C. Cl. 474.

*Mr. John C. Chaney* for appellants:

There is no difference between the taking of land by the Government for a navigable waterway for steamboat traffic for the public good and that of backing up water over a man's land through a public dam constructed so as to work such a result, as held in *United States* v. *Lynah,* 188 U. S. 445. The revetment as well as the dam appropriates the land and deprives the owner of its use.

It was a public statute which authorized the dam, and it was a public statute which authorized the building of the revetment. The officers of the law derived their authority, in both instances, from the same source. *Gibson* v. *United States,* 166 U. S. 273; *Gilman's case,* 3 Wall. 713, distinguished, and see the *Great Falls case,* 112 U. S. 645; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 181; *Mill's case,* 46 Fed. Rep. 738.

The officers and agents of the United States took appellants' lands under sanction of authority and the Government is bound to make just compensation. The building and maintaining the revetment was duly authorized by Congress, as follows: 20 Stat. 363, 366; 21 Stat. 181, 470; 26 Stat. 450, 1116. An implied contract consequently arose to pay for the appropriation of this property. *Great Falls case, supra; Kohl* v. *United States,* 91 U. S. 367.

The law will imply a promise to make the required compensation, where property, to which the Government asserts no title, is taken, pursuant to an act of Congress, as private property to be applied for public uses. Such an implication being consistent with the constitutional duty of the Government, as well as with common justice, the claimants' cause is one that arises out of implied contract, within the meaning of the statute which confers jurisdiction upon the court of claims of actions founded upon any contract, express or implied, with the Government of the United States. *Sanford* v. *United*

*States,* 101 U. S. 341; *Boone Co.* v. *Peterson,* 98 U. S. 403; *United States* v. *Jones,* 109 U. S. 573; *Barron* v. *Baltimore,* 7 Pet. 243; *Withers* v. *Buckley,* 20 How. 84, and see *Sinnickson* v. *Johnson* and *Gardner* v. *Newburgh,* cited in *Pumpelly* v. *Green Bay Co.,* 13 Wall. 181; Angell on Water Courses, § 465a.

The power to take private property for public uses belongs to every independent government. It is an incident of sovereignty, and. does not require constitutional recognition. This power is recognized by the ·Constitution of the United States wherein, by its Fifth Amendment, it declared that private property shall not be taken without just compensation. `United States` v. *Gettysburg Electric Ry. Co.,* 160 U. S 668; *High Bridge Lumber Co.* v. *United States,* 37 U. S. App. 234; *Barron, etc.,* v. *Mayor of Baltimore,* 7 Pet. 243; *Hallister* v. *Benedict Manufacturing Co.,* 113 U. S. 59; *United States* v. *Palmer,* 128 U. S. 262; *United States* v. *Berdan Fire & Ins. Co.,* 156 U. S. 552; *South Carolina* v. *Georgia,* 93 U. S. 4, 13; *Wisconsin* v. *Duluth,* 96 U. S. 379.

It is clear that what was a valuable plantation has been permanently swept away "as the necessary result of the work which the government has undertaken." *Pumpelly* v. *Green Bay Co., supra,* says this is a "taking" of appellants' lands for public use, as stated in the opinion of the court in the *Lynah* case. See also Angell on Water Courses, § 465a; *Hooker* v. *New Haven & N. Co.,* 14 Connecticut, 146; *Rowe* v. *Granite Bridge Co.,* 21 Pick. 344; *Canal App.* v. *The People,* 17 Wend. 604; *Lockland* v. *North M. R. R. Co.,* 31 Missouri, 180; *Stevens* v. *Prop'r of Middlesex Co.,* 12 Massachusetts, 466; *Monongahela Nav. Co.* v. *United States,* 148 U. S. 312; *Scranton* v. *Wheeler,* 179 U. S. 141; *Transportation Co.* v. *Chicago,* 99 U. S. 635.

Even if we are to restrict the ownership of appellants' lands to mere riparian rights, it is unfair to appropriate them without compensation. By the Encyclopedias England makes compensation where it takes such rights under its eminent domain.

The theory of our Government is that the rights of the in-

dividual when subordinated to the public necessities shall be compensated for. Private property is subject to public uses only when paid for. It matters not for what special purpose private property may be taken, it is subject to the limitations of payment cast by the Fifth Amendment.

*Mr. Assistant Attorney General Pradt*, with whom *Mr. Special Attorney William H. Button* was on the brief, for the United States:

This is a case sounding in tort and the Court of Claims has no jurisdiction of an action sounding in tort. *Schillinger* v. *United States*, 155 U. S. 161; *United States* v. *Lynah*, 188 U. S. 445.

The *Great Falls case*, 112 U. S. 645, was an implied contract and the *Langford case*, 101 U. S. 341, was not. Appellant's land was miles away from the revetment. The Government has never parted with the original right to navigable waters. *Gibson case*, 166 U. S. 272; *Shively* v. *Bowlby*, 152 U. S. 1; *Martin* v. *Waddell*, 16 Pet. 367; *Weber* v. *State Harbor Commissioners*, 18 Wall. 57; *Illinois Central R. R. Co.* v. *Illinois*, 146 U. S. 387.

Upon the American Revolution all the rights of the Crown and of Parliament vested in the several States, subject to the rights surrendered to the National Government by the Constitution of the United States. In England these rights only extended to waters in which the tide ebbs and flows. This was the early doctrine of the United States, but this court, *Genesee Chief* v. *Fitzhugh*, 12 How. 443, held that that test was not applicable, and that the true test was whether or not the waters were in fact navigable, and see *Scranton* v. *Wheeler*, 179 U. S. 141, and the Michigan case of *Lorman* v. *Benson*, cited therein; *Stockton* v. *Balt. & N. Y. R. R. Co.*, 32 Fed. Rep. 9, 20; *Gilman* v. *Philadelphia*, 3 Wall. 725; Cooley's Const. Lim. p. 643.

The United States is not responsible for the causes of the destruction of appellants' property but the injury is the effect of natural causes.

The United States did not undertake to appropriate any property but simply to preserve the property intrusted to its care, that is, the commercial interests of Vicksburg. Angell on Water Courses (7th ed.), § 333; *Barnes* v. *Marshall*, 68 California, 569; *Farquharson* v. *Farquharson,* 3 Bligh Pr. N. S. 421; *Gulf R. R. Co.* v. *Clark*, 101 Fed. Rep. 678, and cases cited.

The damage is too remote to constitute a taking. *Transportation Co.* v. *Chicago,* 99 U. S. 642; *Gibson* v. *United States,* 166 U. S. 269. The damages are not, and cannot be, proven, but are conjectural and speculative and cannot be recovered. *Howard* v. *Stillwell Co.*, 139 U. S. 199; *Central Trust Co.* v. *Clark,* 92 Fed. Rep. 293; *Cahn* v. *Telegraph Co.*, 40 Fed. Rep. 40.

MR. JUSTICE McKENNA delivered the opinion of the court.

There is no dispute about the power of the government to construct the works which, it is claimed, caused the damage to appellants' land. It was alleged by appellants that they were constructed by the "United States in the execution of its rights and powers, in and over said river and in pursuance of its lawful control over the navigation of said river and for the betterment and improvement thereof." And also that the works were not constructed upon appellants' land, and their immediate object was to prevent further erosion at De Soto Point. In other words, the object of the works was to preserve the conditions made by natural causes. By constructing works to secure that object appellants contend there was given to them a right to compensation. The contention asserts a right in a riparian proprietor to the unrestrained operation of natural causes, and that works of the government which resist or disturb those causes, if injury result to riparian owners, have the effect of taking private property for public uses within the meaning of the Fifth Amendment of the Constitution of the United States. The consequences of the contention immediately challenge its soundness. What is its limit? Is only the government so restrained? Why not as well riparian pro-

prietors, are they also forbidden to resist natural causes, whatever devastation by floods or erosion threaten their property? Why, for instance, would not, under the principle asserted, the appellants have had a cause of action against the owner of the land at the cut-off if he had constructed the revetment? And if the government is responsible to one landowner below the works, why not to all landowners? The principle contended for seems necessarily wrong. Asserting the rights of riparian property it might make that property valueless. Conceding the power of the government over navigable rivers, it would make that power impossible of exercise, or would prevent its exercise by the dread of an immeasurable responsibility.

There is another principle by which the rights of riparian property and the power of the government over navigable rivers are better accommodated. It is illustrated in many cases.

The Constitution provides that private property shall not be taken without just compensation, but a distinction has been made between damage and taking, and that distinction must be observed in applying the constitutional provision. An excellent illustration is found in *Gibson* v. *United States*, 166 U. S. 269. The distinction is there instructively explained, and other cases need not be cited. It is, however, necessary to refer to *United States* v. *Lynah*, 188 U. S. 445, as it is especially relied upon by appellants. The facts are stated in the following excerpt from the opinion:

"It appears from the fifth finding, as amended, that a large portion of the land flooded was in its natural condition between high-water mark and low-water mark, and was subject to overflow as the water passed from one stage to the other; that this natural overflow was stopped by an embankment, and in lieu thereof, by means of flood gates, the land was flooded and drained at the will of the owner. From this it is contended that the only result of the raising of the level of the river by the government works was to take away the

possibility of drainage. But findings nine and ten show that, both by seepage and percolation through the embankment and an actual flowing upon the plantation above the obstruction, the water has been raised in the plantation about eighteen inches, that it is impossible to remove this overflow of water, and, as a consequence, the property has become an irreclaimable bog, unfit for the purpose of rice culture or any other known agriculture, and deprived of all value. It is clear from these findings that what was a valuable rice plantation has been permanently flooded, wholly destroyed in value, and turned into an irreclaimable bog; and this as the necessary result of the work which the government has undertaken."

The question was asked: "Does this amount to a taking?" To which it was replied: "The case of *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166, answers this question in the affirmative." And further: "The Green Bay Company, as authorized by statute, constructed a dam across Fox River, by means of which the land of Pumpelly was overflowed and rendered practically useless to him. There, as here, no proceedings had been taken to formally condemn the land." In both cases, therefore, it was said that there was an actual invasion and appropriation of land as distinguished from consequential damage. In the case at bar the damage was strictly consequential. It was the result of the action of the river through a course of years. The case at bar, therefore, is distinguishable from the *Lynah* case in the cause and manner of the injury. In the *Lynah* case the works were constructed in the bed of the river, obstructed the natural flow of its water, and were held to have caused, as a direct consequence, the overflow of Lynah's plantation. In the case at bar the works were constructed along the banks of the river and their effect was to resist erosion of the banks by the waters of the river. There was no other interference with natural conditions. Therefore, the damage to appellants' land, if it can be assigned to the works at all, was but an incidental consequence of them.

*Judgment affirmed.*