## JOHN HORSTMANN COMPANY *v.* UNITED STATES.

## NATRON SODA COMPANY *v.* UNITED STATES.

### APPEALS FROM THE COURT OF CLAIMS.

Nos. 26, 32. Argued October 7, 1921.—Decided November 21, 1921.

In actions in the Court of Claims for damages resulting from an unforeseen flooding of claimants' soda lakes following construction and operation of a government irrigation project by which water was brought into the watershed,—

*Held:* (1) That allegations that the water percolated through the ground, due to lack of proper lining in the Government's canals and ditches, the manner of their construction and the natural con-

ditions,· were not intended to set up negligence but merely to show causal connection between the project and the flooding, and hence did not characterize the cause of action as *ex delicto.* P. 144.

(2) That, as no intentional taking of claimants' property could be implied, the Government was not liable *ex contractu,* assuming such causal relation. P. 145. *United States* v. *Lynah,* 188 U. S. 445, distinguished.

54 Ct. Clms. 169, 214; 55 *id.* 66, affirmed.

APPEALS from judgments denying recovery for damages resulting from the flooding of claimants' soda lakes.

*Mr. Edward M. Cleary* and *Mr. Thomas A. Allan,* for appellant in No. 26, submitted.

In the present case there is a taking as fully as in *United States* v. *Lynah,* 188 U. S. 445, i. e., the land is completely submerged and destroyed for all purposes for which it can be used.  In *Gibson* v. *United States,* 166 U. S. 269, the only damage was the loss or inconvenience resulting from an improvement in the navigable waters (which the Government had a right to make), making access to the land more difficult from the waterfront.

In *Bedford* v. *United States,* 192 U. S. 217, the Government's acts were of the character that every riparian owner has the legal right to perform, i. e., to protect his own lands from overflow by the building of structures to prevent the overflow.

*Jackson* v. *United States,* 230 U. S. 1, is likewise a case involving riparian rights and subservience of private owners to the right of the Government to improve the navigability of a river. 48 Ct. Clms. 423. So of *Heyward* v. *United States,* 46 Ct. Clms. 484, affirmed by a divided court, 250 U. S. 633.

In *United States* v. *Cress,* 243 U. S. 316, we have a case of taking not even as strong as this one, where the question is of supplying irrigation facilities and not navigation.

The water-level of the river is the height of the river, and the water-level of the land is the ground-water

level, which the Government in the present case admits raising.

The proposition that a private party would not be liable in this case is not the law in the arid States where irrigation is mostly practiced or where the irrigation was carried on in this case. [Citing authorities.]

*Mr. Frank S. Bright* and *Mr. H. Stanley Hinrichs*, for appellant in No. 32, submitted. (They also moved to remand for further findings.)

The court below made a fundamental error in considering that this case presented only the question of the rights of parties respecting percolating waters. The defendant brought into Carson River Valley an immense amount of surface water from the Truckee River, and transported it at the surface in its ditches to the neighborhood of the claimant's land. As a direct result, some of this surface water has flooded the land and destroyed its value. It is immaterial whether the water entered the land by overflow or by seeping. It is not the medium through which the water travels that determines the question of liability, and it is immaterial whether the course of the water was observable, or hidden and unobserved, so long as the result is certain.

*Mr. Solicitor General Beck* for the United States.

The chief reliance of appellants is upon *United States v. Lynah*, 188 U. S. 445, in which the court, divided four to three, held that where the Government constructed an embankment along the Mississippi, whose direct, certain, immediate and necessary effect was to cause an overflow upon the lands of the plaintiff, there was a taking within the Fifth Amendment. From the essential nature of the act, this court drew the reasonable inference that the Government intended to overflow Lynah's lands, and thus to appropriate them. In the cases at bar, however, all these elements are absent.

There must be an intention on the part of the United States, either expressed or implied, to take the property of another before there can be any implied promise to pay or contract liability incurred. This liability may be inferred where the results naturally. and indubitably flow from the act or effect of the act and may be definitely ascertained or determined. In this case it was impossible for the United States engineers who laid out this irrigation project to have ascertained or determined what effect the irrigation of these lands would have upon the waters of Big and Little Soda Lakes. *Tempel* v. *United States,* 248 U. S. 121; *Bothwell* v. *United States,* 254 U. S. 231.

The decision in the *Lynah Case* should not be extended beyond its reasonable scope. An extension of the rule could only operate to deprive the Government of its immunity from suits sounding in tort; for it would mean that, to the extent that any public improvement, whether carefully or negligently constructed, caused indirect and remote damage, the property thus damaged was taken for public use, a proposition which would be obviously absurd. See *Bedford* v. *United States,* 192 U. S. 217, and *Jackson* v. *United States,* 230 U. S. 1.

If a private corporation had constructed and maintained these canals under the Carson-Truckee project, it would not have been liable to the claimants. [Citing authorities.]

The United States, when it enters upon a public improvement for the common benefit of all the people, is not in a worse position than a private corporation or citizen. *Bedford* v. *United States,* 192 U. S. 217, 223; *Jackson* v. *United States,* 230 U. S. 1, 21, 22.

Claimants had no vested right in the soda accretions from the ground waters of that vast section, nor in the maintenance of a certain density of the water entering the lakes, nor in the maintenance of the then existing ground-water level in the valley where the lakes are lo-

cated. *Lyons* v. *United States,* 26 Ct. Clms. 31, 45; *Cohen* v. *United States,* 162 Fed. 364, 371.

The plaintiff Natron Soda Company, having consented to the construction of the canals and granted the defendants a right of way, is estopped from any right of recovery in the absence of negligence. *Daniels* v. *St. Francis Levee District,* 84 Ark. 333; Lewis, Eminent Domain, 3d ed., § 474; *Wallace* v. *Columbia &c. R. R. Co.,* 34 S. Car. 62; *Nunnamaker* v. *Water Power Co.,* 47 S. Car. 485.

MR. JUSTICE McKENNA delivered the opinion of the court.

Actions in the Court of Claims to recover respectively the sums of $35,000 and $170,000 alleged values of certain properties charged to have been taken and appropriated by the United States.

Both appellants are corporations, and are respectively owners of lands in Churchill County, State of Nevada, surrounding and including lakes known as Little Soda Lake and Big Soda Lake. The Horstmann Company is owner of the former and the Natron Soda Company is owner of the latter.

In 1906 each appellant was manufacturing soda from the waters of the respective lakes and the controversy of the cases turns upon the condition of the lakes at that time, and their condition after an irrigation project was instituted by the Government, called the Truckee-Carson Project.

The lakes are situated in an area known as the Carson Sink Valley, and in 1906 were the source of soda supply to the respective appellants.

From prior to 1867 to 1906 the levels of the lakes had not varied more than 2 feet. In 1906 the United States Reclamation Service acting under the authority of acts of Congress constructed the Truckee-Carson Project consist-

ing of dams, canals, and other structures whereby through the usual means large quantities of surface waters theretofore confined to the watershed of the Truckee River were in 1906 and during each year since then transported to the watershed of the Carson River and distributed to various and sundry tracts of land in the Carson River Valley for irrigation purposes.

Details of the project need not be given but with its advent the body of the ground water in the entire section covered by the project rose, and the volume of water in the lakes has continually increased, and the level of the lakes has risen about 19 vertical feet during the period of 1906 to 1916, in consequence of which the value of the properties of appellants has been destroyed, that of the Horstmann Company being $9,000 and that of the Natron Company being $45,000, according to the findings of the Court of Claims.

There have been additions to the canal project and its ultimate development contemplates the reclamation of 206,000 acres of land. At present the canals of the project ramify an area of 100,000 acres.

No negligence on the part of the United States is alleged or proven.

The conclusion of the court was that appellants were not entitled to recover, hence it dismissed the actions and rendered judgments against appellants for costs of printing the records. Motions for new trials were made and denied.

The question of the jurisdiction of the Court of Claims of the actions is intimated, if not urged, based on the allegation in the petition of the Horstmann Company that owing to the porous condition of the soil in the canals and ditches and "the lack of proper lining in said canals and ditches, and owing to the way said canals and ditches were built, and also to the natural condition existing," the

water flowed into the lake and seeped and percolated through the canals and ditches.[1]

The Government is cautious in its characterization of this allegation and says that it "apparently based the claim of the Horstmann Company upon a tort" and adds if the claim be so based, the Court of Claims had no jurisdiction "as the Government has never waived its immunity from suit in such cases."

We do not think, however, that the allegation was intended as an accusation of negligence but rather to forestall a defense, based on the character of the works,—that from them there could be no causal connection between the project of the Government and the rise of waters in the lakes. The Court of Claims besides explicitly found that there was no negligence.

Upon the merits, the contention of the Government is the absence of such causal connection between its works and the injury to the properties of appellants. It concedes, however, that the contention is a deduction from obscure findings, the court not finding affirmatively that a causal connection did not exist. "Its decision was the Scotch verdict of 'not proved'", to quote counsel.

Appellants oppose the Government's contention and deductions, oppose to them the difference in conditions before and after the execution of the canal project, and their reasoning seems to have the support of the methods that the world employs in the investigation of its phenomena and instances.

Post hoc, therefore, propter hoc may not be confidently asserted, but there is a suggestion of effect and cause in it, of sequence, something more than unrelated occurrence. And of this there seems to be pertinent application in the present case. The transfer of water from one

---

[1] The petition of the Natron Soda Company directly alleges that the acts of the Government were legally done in the exercise of a constitutional and legal power.

watershed to another—from the Truckee River watershed to the Carson River watershed—accompanied by an increase of the water in the lakes from a level, not varied in 29 years more than 2 feet, to 19 vertical feet would seem to demonstrate this as an effect of the canal project. And there can be no doubt of the adequacy of the cause even though, to quote from the findings, " percolating waters are hidden and invisible " and " It does not appear from the evidence how they are governed, or how they move underground." Their effects above ground, a rise of water in the lakes from 2 feet to 19 feet of water, are certainly visible and unmistakable. Indeed, the court explicitly found that with the advent of the irrigation project the body of ground water in the entire section covered by the project rose.

However, we need not arbitrate the contentions but will assume with appellants that there was causal connection between the work of the Government and the rise of waters in the lakes, and the consequent destruction of the properties of appellants, but it does not follow that the Government is under obligation to pay therefor, as for the taking of the properties.

The Court of Claims, as we have seen, decided against such obligation and to its reasoning it would be difficult to add anything. The reasoning of the court is attacked, however, by appellants, and *United States* v. *Lynah,* 188 U. S. 445, is adduced against it.

The instance of the cited case and a certain generality in its reasoning and basic principle gives plausible support to the contention. It is declared that the rule deducible from prior cases, which are reviewed, is that the appropriation of property by the Government implies a contract to pay its value, and it is further declared that there need not be a physical taking, an absolute conversion of the property to the use of the public. It is clear from the authorities, it is said, that, if by public works

the value of the property of an individual is substantially destroyed, its value is taken, within the scope of the Fifth Amendment.   And it was decided that " the law will imply a promise to make the required compensation, where property to which the government asserts no title, is taken, pursuant to an act of Congress, as private property to be applied for public uses."   *Tempel* v. *United States,* 248 U. S. 121, 129, 130.

This generality has had exception in subsequent cases. It is to be remembered that to bind the Government there must be implication of a contract to pay, but the circumstances may rebut that implication.   In other words, what is done may be in- the exercise of a right and the consequences only incidental, incurring no liability.   *Bedford* v. *United States,* 192 U. S. 217; *Kansas* v. *Colorado,* 206 U. S. 46; *Tempel* v. *United States, supra.*   And there is characterization of the *Lynah Case* in *United States* v. *Cress,* 243 U. S. 316.

We think the cases at bar are within the latter decisions, and it would border on the extreme to say that the Government intended a taking by that which no human knowledge could even predict.   Any other conclusion would deter from useful enterprises on account of a dread of incurring unforeseen and immeasurable liability.   This comment is of especial pertinence.   That the result of the Government's work to the properties of plaintiffs could not have been foreseen or foretold is a necessary deduction from the findings of the Court of Claims.   The court found that there is obscurity in the movement of percolating waters, and that there was no evidence to remove it in the present case, and necessarily there could not have been foresight of their destination nor purpose to appropriate the properties.

In the Natron case the Company's predecessors in interest conveyed a right of way to the United States of certain lands of the Company, and, prior to the conveyance,

agreed with the United States that, in consideration of the benefits to be derived from the construction of the works through the lands conveyed, the United States might construct canals and ditches on and across the land, and further agreed " that in consideration of the premises, the first party hereby releases the second party from all claims for damages for entry, survey, or construction of said works."

The Government adduces the agreement and conveyance in opposition of the right of the Natron Soda Company to recover. The Company resists this effort. We, however, are not called upon to pass upon it. Independently of the agreement the Company's claim is to be rejected.

*Judgments affirmed.*