## CHRISTMAN et al. v. UNITED STATES.
### No. 5237.

Circuit Court of Appeals, Seventh Circuit.
Dec. 21, 1934.

Edward W. Bensinger, Jr., of Louisville, Ky. (H. H. Cope, of Madison, Ind., of counsel), for appellants.

Val Nolan, U. S. Atty., and B. Howard Caughran and Paul A. Pfister, Asst. U. S. Attys., all of Indianapolis, Ind.

Before SPARKS and FITZHENRY, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellants are owners of a 71-acre farm in Milton township, Jefferson county, Ind., abutting Indian-Kentucky creek, a nonnavigable tributary of the Ohio river. The mouth of the creek is 54 miles upstream on the river from Louisville, and appellants' property is located about 4 miles up the creek.

The United States government on October 27, 1927, completed the construction of a dam at Louisville, for the purpose of improving navigation on the Ohio, replacing an old dam of an elevation of 412 feet above sea level. The dam was built in pursuance of an act of Congress which provided for the replacement of the old dam with one 418 feet above sea level. Pursuant to the provisions of the act granting authority so to do, the Secretary of War amended the plans, and the dam was erected with an elevation of 420 feet above sea level, thereby eliminating the necessity of another one at Madison, Ind.

Under the Tucker Act (Jud. Code § 24 (20), 28 USCA § 41(20), upon an implied contract, appellants sued to recover damages for the taking of their property without compensation. They alleged that by reason of the erection of the dam, the natural flow of the Ohio river has been increased in depth in excess of 8 feet above the previous flow; that as a result the waters of the Ohio have been obstructed and impeded in their natural flow, creating a permanent pool of water 8 feet above the prior level; that this pool of still, slack water extends up and into the creek and thereby causes permanently intermittent overflows and submersion of the lands of appellants.

The cause was tried by the court without a jury, and findings of fact and conclusions of law were adopted. Among other matters, the trial court found that the minimum pool stage of 420 feet at Louisville has had no effect upon high-water stage in the Ohio, as the wickets of the dam are always lowered in time of flood, so that the river has then an unobstructed flow; that there has been no permanent filling of the channel of the creek as a result of the construction of the dam; that part of appellants' land is overflowed by the creek as a result of freshets coming down the creek from the hills and by backwater from the Ohio in times of flood upon the latter; that this has always been true and that the dam has not increased or decreased the frequency, the extent, or the duration of these overflows; that the years 1928, 1929, and 1932 saw extraordinary weather conditions in the vicinity of the creek in the spring and summer months; that no overflows during those seasons were caused or increased by the presence of the

dam; and that the dam has not subjected to additional overflow any of appellants' land.

The court concluded that there has been no taking of appellants' property and that appellants are not entitled to recover because of the construction of the dam. In its opinion the court held that the land in question was subject to the same periodical overflows before the construction of the dam as occurred after the dam was built; that the effect of the construction of the dam, if any, upon the overflow of the farm is purely speculative; that there is no permanent impairment in the value of the land because of the existence of the dam; and that appellants' damages, if any, were consequential, for which the court is powerless to render compensation.

Appellants insist that there is no substantial evidence to support the finding to the effect that the dam has not increased the overflow upon appellants' land; that the evidence was to the contrary and that no competent evidence in contravention thereof was offered; that the damage was not a consequential or indirect one but direct in character, the proximate cause of which was the construction and maintenance of the dam. In this connection appellants rely chiefly upon the case of United States v. Cress, 243 U. S. 316, 37 S. Ct. 380, 61 L. Ed. 746.

Appellee insists, however, that the findings of fact are supported by the evidence and that there is no direct damage for which the law will allow recovery, but that such damage, if any, is within those which the Supreme Court in Sanguinetti v. United States, 264 U. S. 146, 44 S. Ct. 264, 68 L. Ed. 608, held were of such consequential character as to afford no relief under the doctrine of an implied contract and that the remedy, if any, is one in tort for which the government is not liable.

There is no dispute that the building of the dam did create a pool of water in the Ohio some 8 feet higher in normal times than previously; that this pool raises the water permanently under normal conditions from 5 to 8 feet at the mouth of the creek; that the dam does not impede the flow of water in time of abnormal flow on the Ohio, for the reason that it is open, leaving the flow of the river unobstructed after it reaches 420 feet. It is appellants' contention that the damages claimed follow, not from backwater from the Ohio in times of flow, but from overflow caused by freshets on the upper end of Indian creek, rushing down a comparatively steep descent toward the outlet into effect upon the creek, and that there is no increased probability of flooding this land. the Ohio and there rushing head on into and being impeded by the pool of water maintained in normal times at 420 feet. In other words, appellants admit that overflow has always occurred from backwater in the Ohio in the spring. These overflows, coming before crops were planted, because of the deposit of silt as fertilizer, were accepted rather as acts of beneficence than as damage.

But the real basis of the complaint is the damage caused by overflows from freshets in the summer months after crops have been planted and are growing. The theory of appellants is that when the Ohio is not in abnormal flow but in its normal condition of 420 feet, as maintained by the dam, and a freshet in the creek rushes down the creek, the pool, by having raised the water at the outlet of the creek from 5 to 8 feet, acts as a dam and prevents egress from the creek, thereby causing an overflow upon appellants' land.

Appellants' witnesses testified to such effect; they produced evidence that the maintenance of the dam had increased the danger of overflow from such freshets in the summer months when the Ohio was not in flood. Crops have been destroyed and 6½ acres of farm land have been abandoned.

In opposition the government offered the testimony of two witnesses and certain documentary evidence. Colonel Johnson testified that he had been familiar with the records concerning the waters of the Ohio since 1930. He knew nothing about the condition of the river or the creek before that date. He had no records regarding the creek for any year before 1932. He testified that there was a permanent increase in the height of low-water stage at the mouth of the creek of 8 feet, brought about by construction of the dam; that he visited the creek about a week before the trial; that the pool had backed water up the creek about a mile; that this was a permanent condition; that there is no flow in the stream except after heavy rainfall; and that freshets, overflowing because impeded by the pool in the Ohio, would be temporary in character. He expressed an opinion that no damage had occurred.

Captain Kern, in connection with the photographs admitted in evidence, showed clearly that unusual flow on the Ohio would not increase the probability of overflows

from freshets on the creek. He, too, was unfamiliar with conditions prior to the building of the dam. He was of the opinion that the overflows in the summers of the years in question were due solely to floods and unusual conditions, that the dam had no He testified that he had no records of observations made prior to 1932; that the creek was not of sufficient capacity to carry freshets off, and that in his opinion the fact that there is an increase of 8 feet in the water's depth at the mouth of the creek would not result in raising such freshet water.

A careful analysis of the testimony of each of these witnesses discloses that they offered little, if any, competent evidence as to the effect of the pool of water in the Ohio in its obstruction of freshets coming down the creek at a time when the river is not at flood stage. We are probably warranted, therefore, in holding that the evidence is insufficient to support the finding that the maintenance of the dam has not at least indirectly increased the probability of overflow on appellants' land, because of freshets coming down the creek, striking the pool of water at times when the Ohio is not at flood stage and being thereby impeded and held back so that they overflow.

However, this conclusion, if correct, does not obviate the necessity of determining whether, upon such showing, appellants were entitled to recover. There remains the crucial question of whether the facts result in direct damages or in merely consequential, tortious damages for which the law does not permit recovery.

In the case of Sanguinetti v. United States, 264 U. S. 146, 44 S. Ct. 264, 265, 68 L. Ed. 608, the government had built a canal and a diversion dam with the intent of diverting water from one river into another. Plaintiff's land was subject to overflow, but it was contended that the canal, being insufficient to carry the water, increased the amount of overflow. The court refused to allow recovery. After referring to the decisions in United States v. Lynah, 188 U. S. 445, 23 S. Ct. 349, 47 L. Ed. 539, United States v. Cress, 243 U. S. 316, 37 S. Ct. 380, 61 L. Ed. 746, and Pumpelly v. Green Bay & M. Canal Company, 13 Wall. 166, 20 L. Ed. 557, the court said:

"Under these decisions and those hereafter cited in order to create an enforceable liability against the government, it is at least necessary that the overflow be the direct result of the structure, and constitute an actual, permanent invasion of the land, amounting to an appropriation of and not merely an injury to the property. These conditions are not met in the present case. Prior to the construction of the canal the land had been subject to the same periodical overflow. If the amount or severity thereof was increased by reason of the canal, the extent of the increase is purely conjectural. Appellant was not ousted, nor was his customary use of the land prevented, unless for short periods of time. If there was any permanent impairment of value, the extent of it does not appear. It was not shown that the overflow was the direct or necessary result of the structure; nor that it was within the contemplation of or reasonably to be anticipated by the government. If the case were one against a private individual, his liability, if any, would be in tort. There is no remedy in such case against the United States. Keokuk Bridge Co. v. United States, 260 U. S. 125, 43 S. Ct. 37, 67 L. Ed. 165.

"The most that can be said is that there was probably some increased flooding due to the canal and that a greater injury may have resulted than otherwise would have been the case. But this and all other matters aside, the injury was in its nature indirect and consequential, for which no implied obligation on the part of the government can arise. See Gibson v. United States, 166 U. S. 269, 17 S. Ct. 578, 41 L. Ed. 996; Bedford v. United States, 192 U. S. 217, 24 S. Ct. 238, 48 L. Ed. 414; Transportation Co. v. Chicago, 99 U. S. 635, 25 L. Ed. 336; Jackson v. United States, 230 U. S. 1, 33 S. Ct. 1011, 57 L. Ed. 1363; Horstmann Co. v. United States, 257 U. S. 138, 42 S. Ct. 58, 66 L. Ed. 171; Coleman v. United States (C. C.) 181 F. 599."

In other words, though there was evidence that the amount of overflow was increased, the court held that the damage was indirect and consequential. Such damages are those which do not arise as an immediate or natural and probable result of the act of the party, but as an incidental consequence. The courts have followed quite generally this definition. A well-expressed statement is that in Loiseau v. Arp, 21 S. D. 566, 114 N. W. 701, 703, 14 L. R. A. (N. S.) 855, 130 Am. St. Rep. 741, where the court held that: "Damages are either direct or consequential. The former are such as result from an act without the intervention of any intermediate controlling or self-efficient cause. The latter are such as are not produced without the concurrence of some oth-

er event attributable to the same origin or cause."

In the present case appellants' damages resulted from the construction of the dam coupled with the intervention of an intermediate controlling or self efficient cause—freshets running down the creek. If we are to give effect to the language of the Supreme Court and refuse damages where they are consequential and produced only by indirection, it seems to us that appellants' claim was rightfully denied.

The case of United States v. Cress, supra, relied upon by appellants, had to do with the construction of a dam, which directly produced a condition along the river in which the dam was located, whereby the natural use of the land was interfered with, and the Supreme Court sustained a recovery. After pointing out that the taking of property for public purpose is subject to all rights under the Fifth Amendment of the Constitution and reciting that the right to have the water flow away from the abutting land unobstructed, except as in the natural course, would be protected as a property right, compensation was approved for the taking of the land and for a permanent easement upon the same. The court proceeded to hold that intermittent overflows, which would persist from year to year, were such a direct damage from the construction of the dam that compensation for the taking should be allowed.

The line of demarcation between the Sanguinetti Case and the Cress Case is very narrow, but, apparently, to give effect to the two decisions, the court below was justified in saying that the damages here involved only an indirect result of the building of the dam and are the consequential result of that fact coupled with the intervention of other elements, the existence of which was not due to the building of the dam. Apparently the case at bar comes within the Sanguinetti Case where the court held that though the overflows were increased, the damages resulting were of such indirect and consequential character, due to the intervention of other an action upon an implied contract.

Whether an action in tort would lie, if appellee were a private party, is wholly beside the point. Damages in tort cannot be allowed against the United States in an action such as this. Keokuk & Hamilton Bridge Co. v. U. S., 260 U. S. 125, 43 S. Ct. 37, 67 L. Ed. 165.

Accordingly, the judgment of the District Court is affirmed.