## W. A. ROSS CONST. CO. v. YEARSLEY et al.

### No. 11353.

Circuit Court of Appeals, Eighth Circuit.

May 10, 1939.

Rehearing Denied June 2, 1939.

Clay C. Rogers, of Kansas City, Mo., and John M. Dierks, of Nebraska City, Neb. (Paul Jessen, of Nebraska City, Neb., and O. C. Mosman and C. Jasper Bell, both of Kansas City, Mo., on the brief), for appellant.

Robert Van Pelt, of Lincoln, Neb. (Dwyer & Dwyer, of Plattsmouth, Neb., and Perry, Van Pelt & Marti, of Lincoln, Neb., on the brief), for appellee Lawrence Yearsley.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This is an action at law brought by Lawrence Yearsley and George Yearsley, who were the owners of an undivided two-thirds interest in a 250-acre farm and its accretions bordering upon the Missouri River in Otoe County, Nebraska, against the appellant, W. A. Ross Construction Company (hereinafter referred to as the contractor),—which had, under a contract with the United States, constructed dikes in the Missouri River for the purpose of improving navigation,—to recover damages due to the erosion of the plaintiffs' "accretion land" caused by the deflecting of the current of the river against it by the dikes and by the wash from the paddle wheels of the appellant's steamboats. The owner of the other undivided one-third interest in the land refused to join the Yearsleys as a plaintiff in the action, and was therefore made a defendant. Issues were joined; the case was tried to a jury; and from a judgment for $806 against the contractor entered upon a verdict for the plaintiffs, this appeal was taken.

In their amended petition, filed in December, 1937, the plaintiffs, alleged, in substance, that they were the owners of an undivided two-thirds of the land in suit; that for a period of about three years, the contractor had been engaged in construction work on the Missouri River, changing its course; that it had built dikes in the river and had used large boats with paddles and pumps to wash away land along its banks, and, in so doing, had washed away 100

acres, more or less, of good pasture and farm land belonging to the plaintiffs, which was worth $50 an acre; that during the month of July, 1937, by reason of the dikes built by the contractor in close proximity to the plaintiffs' land, the waters of the river were cast upon their land, completely destroying the blue grass thereon and impairing the value of the land; that, in addition, the contractor had cut trees and brush growing upon it;—all to the plaintiffs' damage in the sum of $8,000, for which judgment was prayed.

The contractor, in its answer, admitted the plaintiffs' interest in the land in suit; admitted that it had done construction work and built dikes in the Missouri River for more than three years; but denied that it had, by such construction work, washed away any part of the plaintiffs' land, produced artificial erosion, or changed the course of the river, except to confine it between stabilized bank lines as set and defined by the Government Engineers in charge of this work for the Government of the United States. It denied any trespassing, tree cutting, or flooding of the plaintiffs' land. It asserted that all of the construction work which it had performed and of which the plaintiffs complained had been performed under written contracts with the Government and under the directions of the Secretary of War and the supervision of the Chief of Engineers of the United States, for the purpose of improving the navigation of the Missouri River as authorized by an Act of Congress, and that the construction work so performed by the contractor was a part of the plan of the Government to establish a permanent navigable six-foot channel in the Missouri River; and that if the construction of the dikes by the contractor for the Government, in aid of navigation, had injured the plaintiffs' land, the injury was not of a character which entitled the plaintiffs to compensation or damages.

The plaintiffs in their reply admitted that the contractor was operating under a Government contract, and alleged that the contract did not contemplate the taking of their land without just compensation and due process of law, and that the contractor's acts resulting in the destruction of a part of their land was a violation of their rights under the Fifth Amendment to the Constitution of the United States, U.S.C.A., prohibiting the taking of private property for public use without just compensation.

Upon the trial, the evidence failed to sustain the claim of the plaintiffs that the contractor was responsible for the cutting of trees or for the flooding of the lands in suit. The evidence established that two dikes built in the river above, and one dike built opposite, their land had diverted the channel or the current of the river from the Iowa shore to the Nebraska shore, and that, as a result, the "accretion land" of the plaintiffs to the extent of perhaps 95 acres had been eroded and carried away. There was also evidence tending to show that in extending the dike opposite the plaintiffs' land from the Iowa shore toward the Nebraska shore, the contractor, apparently to keep open an adequate channel for navigation between the end of the dike and the shore, accelerated the erosion of the plaintiffs' land by using the paddle wheels of its steamboats to increase the action of the current. There was no evidence, however, to show that this "paddle washing" had done anything more than hasten the inevitable. It was undisputed that the work which the contractor had done in the river bed was all authorized and directed by the Government of the United States for the purpose of improving the navigation of this navigable river.

The plaintiffs were entitled to maintain this action against the contractor alone, even though the construction work complained of was done under the authority and direction of the United States. The rule is that an officer or agent of the United States may be sued where he has exceeded his authority or acted under an authority not validly conferred; and the exemption of the United States from liability for tort does not protect its officers or agents from personal liability to persons whose rights of property have been wrongfully invaded by them. Little v. Barreme, 2 Cranch 170, 178, 2 L.Ed. 243; United States v. Lee, 106 U.S. 196, 220, 221, 1 S.Ct. 240, 27 L.Ed. 171; Noble v. Union River Logging Railroad Co., 147 U.S. 165, 171, 172, 13 S.Ct. 271, 37 L.Ed. 123; Belknap v. Schild, 161 U.S. 10, 18, 16 S.Ct. 443, 40 L.Ed. 599; Tindal v. Wesley, 167 U.S. 204, 214, 215, 222, 223, 17 S.Ct. 770, 42 L.Ed. 137; Scranton v. Wheeler, 179 U.S. 141, 152, 21 S.Ct. 48, 45 L.Ed. 126; Philadelphia Co. v. Stimson, 223 U.S. 605, 619, 620, 32 S.Ct. 340, 56 L.Ed. 570; Goltra v. Weeks, 271 U.S. 536, 545, 46 S.Ct. 613, 70 L.Ed. 1074; Ickes v. Fox, 300 U.S. 82, 97, 57 S.Ct. 412, 81 L.Ed. 525. There was no lack of valid authority and no

wrongful invasion of the plaintiffs' property rights unless the construction of these dikes by the contractor constituted a taking or appropriation of so much of the plaintiffs' land as was washed away as a result of the diversion of the current by the dikes.

It is apparent that the vital question in this case is whether the building of the dikes in the Missouri River which diverted the current, which, after its diversion, eroded the plaintiffs' land, constituted an appropriation or taking of property for which compensation should be made, or whether the loss suffered by the plaintiffs was "merely a consequential damage incident to a public undertaking, which must be borne without any right to compensation." Peabody v. United States, 231 U.S. 530, 538, 34 S.Ct. 159, 160, 58 L.Ed. 351.

The District Court was of the opinion that the plaintiffs were entitled to recover for such loss and damage caused by the erosion of their lands as was directly attributable to, and was proximately caused by, either the dikes constructed by the contractor or the wash from the paddle wheels of the contractor's boats; and submitted the case to the jury upon that theory. The jury's verdict amounted to a finding that the value of the plaintiffs' undivided two-thirds interest in the land eroded by the river and by the "paddle washing" was $806 and that the erosion was proximately caused by the dikes and by "paddle washing".

The authorities upon which the plaintiffs rely to sustain their judgment are those dealing with the right to recover compensation for lands affected by overflow from the building of dams in navigable streams. [1]

■ "It is clear * * * that where the government by the construction of a dam or other public works so floods lands belonging to an individual as to substantially destroy their value there is a taking within the scope of the 5th Amendment." United States v. Lynah, 188 U.S. 445, 470, 23 S.Ct. 349, 357, 47 L.Ed. 539. See, also, United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746.

■ We think that it is equally clear that when the United States, in aid of navigation, builds structures in the bed of a navigable river, which merely cause a diversion of the current or shifting of the channel, it does not thereby directly invade, appropriate or take riparian lands eroded as a result of the diversion of the current, and that the damage caused is a consequential one incident to a public undertaking, which must be borne without right to compensation. This is so for the reason that an act done in the proper exercise of the power of the government over the improvement of navigable rivers, which does not directly encroach upon private property, though its consequences may impair the use of such property, is not a taking within the meaning of the Fifth Amendment, and riparian ownership on navigable waters is subject to the obligation to suffer the consequences of an improvement of navigation by the United States in the exercise of its dominant right in that regard. Northern Transportation Co. v. Chicago, 99 U.S. 635, 642, 25 L.Ed. 336; Gibson v. United States, 166 U.S. 269, 275, 17 S.Ct. 578, 41 L.Ed. 996; Scranton v. Wheeler, 179 U.S. 141, 163, 21 S.Ct. 48, 45 L.Ed. 126; Bedford v. United States, 192 U.S. 217, 225, 24 S.Ct. 238, 48 L.Ed. 414; United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 70, 72, 33 S.Ct. 667, 57 L.Ed. 1063; Jackson v. United States, 230 U.S. 1, 23, 33 S.Ct. 1011, 57 L.Ed. 1363; Hughes v. United States, 230 U.S. 24, 32–34, 33 S.Ct. 1019, 57 L.Ed. 1374, 46 L.R.A.,N. S., 624; United States v. Archer, 241 U.S. 119, 148, 36 S.Ct. 521, 60 L.Ed. 918; United States v. Cress, 243 U.S. 316, 327, 37 S. Ct. 380, 61 L.Ed. 746; John Horstmann Co. v. United States, 257 U.S. 138, 145, 146, 42 S.Ct. 58, 66 L.Ed. 171; Sanguinetti v. United States, 264 U.S. 146, 150, 44 S.Ct. 264, 68 L.Ed. 608; Franklin v. United States, 6 Cir., 101 F.2d 459, 461–463.

In the case last cited the plaintiffs had alleged in their complaint that dikes similar to those here involved had been constructed by the United States in the Mississippi River above and opposite 1,100 acres of fertile farm lands on the Tennessee side of the river, in which lands each of them had an undivided one-fourth interest; that the purpose and effect of the construction of these dikes was to force the current of the river away from its natural course on the Arkansas side, across the river and

---

[1] Pumpelly v. Green Bay & M. Canal Co., 13 Wall. 166, 80 U.S. 166, 20 L.Ed. 557; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; United States v. Welch, 217 U.S. 333, 30 S. Ct. 527, 54 L.Ed. 787, 28 L.R.A.,N.S., 385, 19 Ann.Cas. 680; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L. Ed. 746; United States v. Chicago, B. & Q. R. Co., 8 Cir., 82 F.2d 131, 106 A. L.R. 942; United States v. Chicago, B. & Q. R. Co., 7 Cir., 90 F.2d 161.

against the bank on the Tennessee side, in order to improve navigation, with the result that within one year after the completion of the dikes all but a few acres of their lands were washed away; that the destruction of these lands was the direct and proximate result of the construction of the dikes; that the destruction was inevitable and that the government and its agents knew that it would occur; and that the construction of the dikes constituted the taking of their lands within the meaning of the Fifth Amendment to the Constitution of the United States. The lower court sustained a demurrer to their complaint, and entered a judgment of dismissal, which was affirmed on appeal. Judge Allen, who delivered the opinion of the Court of Appeals, after discussing the authorities bearing upon the question, said (page 463 of 101 F.2d):

"In the instant case appellants urge that since the alleged purpose in constructing the dike was to change the current of the river, a direct invasion results. They contend that the riparian owner has a right to have the river come to him unchanged in its natural condition. This is their right as against individual riparian owners (United States v. Chandler-Dunbar Water Power Co., supra [229 U.S. 53], at page 70, 33 S. Ct. 667 [57 L.Ed. 1063]; Cubbins v. Mississippi River Commission, 241 U.S. 351, 366, 36 S.Ct. 671, 60 L.Ed. 1041), but not as against the paramount power of the United States to improve navigation. United States v. Chandler-Dunbar Water Power Co. [229 U.S.], at page 70, 33 S.Ct. 667 [57 L.Ed. 1063]; Cubbins v. Mississippi River Commission [241 U.S.], at page 369, 36 S. Ct. 671 [60 L.Ed. 1041]; Hughes v. United States, 230 U.S. 24, 33 S.Ct. 1019, 57 L.Ed. 1374, 46 L.R.A.,N.S., 624. The power of Congress extends to the whole expanse of the stream. Greenleaf-Johnson Lumber Co. v. Garrison, Secretary of War, 237 U.S. 251, 263, 35 S.Ct. 551, 59 L.Ed. 939. The United States is not responsible to riparian owners for consequential damages from the deflection of waters by reason of structures lawfully constructed in aid of navigation."

We are in complete accord with the conclusion reached in that case and the reasoning upon which it is based. No useful purpose would be served by restating what has been so well expressed.

The plaintiffs believe that this case may be distinguished from the Franklin case because the erosion here was accelerated by the wash from the paddle wheels of the contractor's steamboats. The fact that the inevitable washing away of the plaintiffs' land by the current was somewhat hastened by artificial means, we think, is of no help to the plaintiffs. The evidence did not show that this "paddle washing" had enhanced the plaintiffs' injury or had eroded land which was not already doomed to destruction. In any event, it is impossible to ascertain how much of the erosion was caused by "paddle washing".

It is our conclusion that the District Court erred in failing, at the close of the evidence, to direct a verdict in favor of the contractor.

The judgment is reversed and the case remanded for further proceedings not inconsistent herewith.