Whitakee, Judge,
delivered the opinion of the court:
Plaintiff, as the owner of certain lands described in its petition which were riparian to the San Joaquin Eiver, sues to recover the value of its water rights in said river of which it alleges it has been deprived by the erection of the Friant Dam. It alleges that as the owner of said lands it was entitled to the use of the waters of the San Joaquin Eiver for irrigation, for the watering of stock, and for domestic purposes, but that in derogation of those rights, the defendant by the construction of the Friant Dam, completed on October 20,1941, has completely diverted all of the waters of the San Joaquin Eiver from plaintiff’s lands and has conveyed them through canals to. certain other lands non-riparian to said river; that the value of these water rights was.$14,760; that this amount has been deposited by the defendant in escrow, to be paid to Miller & Lux, Inc., unless plaintiff establishes its right to it by suit in this court. The claim of Miller & *394 Lux, Inc., is founded on a reservation in the deed from it to plaintiff’s grantor, in which it was recited that the conveyance of the lands are subject “to the water rights of the grantor * * * whether such water rights be riparian, appropria-tive, or prescriptive * * * including the right to contract for or permit storage on the upper reaches of the San Joaquin River * * *. This covenant and condition shall not be construed as an extinguishment of the riparian rights of the land herein conveyed, but as an estoppel in favor of the grantor * * * against the grantee * * * to the extent herein provided.”
The demurrer, however, is not grounded on this conflict in interest; its sole ground is that plaintiff’s petition “fails to allege a taking of plaintiff’s property or property rights within the meaning of the Fifth Amendment to the Constitution; that such damages as are alleged are indirect, consequential and not within the jurisdiction of the court.”
Defendant says that its purpose in erecting this dam was not only to irrigate certain arid lands, but was also done for the purpose of flood control, and, hence, in aid of navigation; and, therefore, that defendant is not liable for any resulting injury to plaintiff’s riparian rights. It relies, among others, upon the cases of Gibson v. United States, 166 U. S. 269; United States v. Rio Grande Irrigation Co., 174 U. S. 690; United States v. Chandler-Dunbar Co., 229 U. S. 53; Greenleaf Lumber Co. v. Garrison, 237 U. S. 251; Sanguinetti v. United States, 264 U. S. 146; United States v. Appalachian Power Co., 311 U. S. 377; Oklahoma v. Atkinson Co., 313 U. S. 508.
This proposition of law may be conceded; but plaintiff’s petition alleges that the purpose in the erection of this dam was not to aid navigation, but solely to irrigate certain arid lands. If this is true, we think the defendant is liable for the taking of whatever riparian rights plaintiff had in the water of this river. A landowner’s rights in a navigable stream are subject to the paramount right of the Government to take whatever steps it deems necessary in the improvement of navigation; but the Government has no such right in the waters of a stream for irrigation purposes. Cf. Horstmann Co. v. United States, 257 U. S. 138. Certainly it has *395 not the right to take the water away from one man and sell it to another without compensating the man deprived of it. Plaintiff’s riparian rights in this stream, if any, was a property right, of which it cannot be deprived without being paid just compensation.
However, defendant says the plaintiff’s land has not been taken, but has only been damaged by the destruction of its riparian rights, and that this court has jurisdiction only of a suit for a taking of land and not for damages to it. We do not think this is a suit for damages to land; it is one for the taking of a right plaintiff had to use the water of this river. This is a property right, for the taking of which the owner is entitled to just compensation. Yates v. Milwaukee, 10 Wallace 497, 504. In this case the Supreme Court said:
This riparian right is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and if necessary that it be taken for the public good, upon due compensation.
See also Kaukauna Co. v. Green Bay, etc., Canal, 142 U. S. 254; United States v. Cress, 243 U. S. 316; Willow River Power Co. v. United States, No. 45067, decided February 7, 1944. Cf. Horstmann Co. v. United States, 257 U. S. 138.
But the defendant says that the Acts of Congress authorizing the construction of this dam and the reports to which they refer show that a part of the purpose was to aid navigation, and that on the demurrer we must take those Acts into consideration as well as the allegations of plaintiff’s petition.
It is said that this project was originally authorized by the Act of August 30, 1935 (c. 831, 49 Stat. 1028, at page 1038.) Section 1 of this Act provides in part as follows:
That the following works of improvement of rivers, harbors, and other waterways are hereby adopted and authorized, to be prosecuted under the direction of the Secretary of War and supervision of the Chief of Engineers, in accordance with the plans recommended in the respective reports hereinafter designated and subject to the conditions set forth in such documents. * * *
*396 At page 1038 there is listed “San Joaquin Liver and Stockton Channel, and Suisan Bay, California; Report of Chief of Engineers dated June 10, 1933.” An examination of that report shows, however, that no reference was made to the Eriant Dam or to any improvement of the San Joaquin River above Stockton, which place is many miles below plaintiff’s lands and the Friant Dam.
The work was done under the power conferred on the President by the Emergency Relief Appropriation Act of 1935, approved on April 8,1935 (c. 48, 49 Stat. 115), and the Reclamation Act of June 17,1902 (32 Stat. 388), as amended, as shown by the report of the Secretary of the Interior dated November 26,1935, quoted in part in footnote 1 on the following pages.
The Act of June 17,1902, supra, provided for the use of the proceeds from the sale and disposal of certain public lands for the construction and maintenance of irrigation works, and for the storage, diversion and development of waters for the reclamation of arid and semiarid lands. The Act of June 25, 1910 (36 Stat. 835), authorized the transfer to the reclamation fund created by the Act of June 17,1902, supra, of a sum not to exceed $20,000,000, and the Emergency Relief Appropriation Act of 1935, supra, authorized the expenditure of $500,000,000 of the sums thereby appropriated for “rural rehabilitation and relief in stricken agricultural areas, and water conservation, trans-mountain water diversion, and irrigation and reclamation.”
Section 4 of the Act of June 25,1910 provided in part:
* * * and hereafter no irrigation project contemplated by said Act of June seventeenth, nineteen hundred and two, shall be begun unless and until the same shall have been recommended by the Secretary of the Interior and approved by the direct order of the President of the United States.
The Secretary’s report, referred to above, was made in compliance with the requirements of this section, and of a similar section in the Act of December 5,1924 (43 Stat. 672, 702), as it states.
The Reclamation Acts have nothing to do with navigation; they provide for the irrigation of arid and semiarid lands. *397 However, some features of the Central Valley project, of which the construction of the Friant Dam was a part, did have as a part of their purpose certain aids to navigation, but it will be seen from reading the report of the Secretary of the Interior that the construction of the Friant Dam had no relation whatever to navigation, but was solely for the purpose of irrigation. Indeed, this dam completely diverted from the Channel of the San Joaquin River all waters above the dam.
This Central Valley project, as is shown by the report of the Secretary of the Interior, contemplated the construction of the Kennett Dam on the Sacramento River, for the Friant Dam on the San Joaquin River, for the construction of the San Joaquin Pumping System, and for the construction of several canals. The Kennett Dam on the Sacramento River was designed to conserve water, to generate electric power, and to aid navigation; the Friant Dam and canals were solely designed to furnish water to irrigate lands in the northern part of San Joaquin Valley; and the San Joaquin Pumping System was for the purpose of pumping water from the Ken-nett Reservoir on the Sacramento River to the San Joaquin River to replace the water diverted by the Friant Dam and canals. The latter part of the project, however, was abandoned. (Report of Chief of Engineers, dated April 6,1934, Rivers and Harbors Document No. 35, 73rd Congress, 2nd Session, and Act of August 26, 1937 (50 Stat. 844).) Pertinent parts of the Secretary’s report are copied in the footnote[1] below.
*398 But the defendant says Congress in the Act of August 26, 1937 (c. 832, 50 Stat. 844), expressly stated that the entire Central Valley project was for the purpose of improving navigation, among other things. The Act does say that the “entire Central Valley project * * * [is] declared to be for the purposes of improving navigation” etc.; but we do not understand Congress to have meant, the entire project and each integral part thereof. Such a statement would fly in the face of uncontroverted facts. The Friant Dam could not have been intended to improve navigation, since it took all of the water out of the river. Boats do not navigate over a dry riverbed. The San Joaquin Pumping System and the Kennett Dam on the Sacramento River were intended, in part, to improve navigation on the San Joaquin River, and when we look at the “entire” project, that is, the project as a whole, it is fair to say that one of its purposes was to improve navigation; but if we look at the construction of the Friant Dam alone, not supplemented by the San *399 Joaquin Pumping System, it is impossible to say it was intended to improve navigation, and we do not think Congress-meant to say it was. Section 2 of the Act of August 26,1937,. supra, is quoted in part in the footnote[2] below.
There is nothing in the Acts nor in the documents referred' to that negative the allegation of plaintiff’s petition that the-purpose of the construction of this dam was solely to irrigate-certain nonriparian lands. If this be true, and if the waters; of this river have been diverted from plaintiff’s lands, as; alleged, there has been a taking under the Fifth Amendment-
Certainly the Bureau of Reclamation thought there had been a taking for it deposited in escrow the value of the rights taken, to be paid to the person entitled thereto.
Defendant’s demurrer must be overruled. It is so ordered.
MaddeN, Judge; LittletoN, Judge; and Whaley, Chief Justice, concur.
JoNES, Judge, took no part in the decision of this case.

 The Central Valley project embodies a plan for the conservation, regulation, distribution and utilization of the water resources of the Sacramento and San Joaquin rivers to provide urgently needed water supplies for existing agricultural, industrial and municipal developments in the Sacramento and San Joaquin valleys and upper San Francisco Bay region which contain 3,000,000 acres of settled irrigated and productive land, and a population of 900,000 persons. In addition to providing new water supplies to meet serious problems of water shorta'ge, the project contemplates the restoration of commercial navigation on the upper Sacramento River, increased flood protection for the valley lands, and incidentally the generation of about a billion and a half kilowatt hours annually of hydroelectric energy.
• The key unit of the project is Kennett Reservoir on the Sacramento River. A dam 420 feet high will regulate floods and store three million acre-feet of water. Water released from the reservoir, after generating hydroelectric power, will flow down the Sacramento River, maintaining adequate depths for navigation and furnishing ample supplies for irrigation, municipal and industrial use *398 along the main river and in the fertile delta region of the Sacramento and San Joaqin rivers. Intrusion of salt water from the bay into the delta channels— a frequent occurrence in recent years, causing substantial loss in crops and threatening destruction of productivity — will be prevented by the released waters. In addition water supplies will be made available in the delta channels for various uses in the nearby upper San Francisco Bay area, and for utilization in the San Joaquin Valley. Conduits to carry the supplies to these areas are.provided. The supply for the San Joaquin Valley will be conveyed up the San Joaquin River through a series of pumping plants and intervening natural and artificial channels a distance of 150 miles, lifting the water to an elevation of 160 feet above sea level. This water will replace San Joaquin River water now used for irrigation in the northern San Joaquin Valley, thus permitting the entire flow of the San Joaquin River to be regulated in Friant Reservoir— the second storage unit of the project — and to be utilized in the southern San Joaquin Valley where local supplies are deficient. Water from this reservoir will be delivered by gravity through conduits extending northerly and southerly to serve developed irrigated lands in an area extending from Madera County on the north to Kern County on the south.
*****
Friant Reservoir. — A dam, 250 feet high, will be constructed on San Joaquin River, which will store 400,000 acre-feet of water, which will permit the diversion of San Joaquin River water southward at elevation 467 feet. One and one-half million acre-feet annually on the average will be available for transmission from the reservoir through the means of the San Joaquin River Pumping System and the purchase of water rights in the San Joaquin River.
Friant-Kern Canal. — The Friant-Kern Canal will extend from Friant Reservoir to Kern River, a distance of 157 miles and will be capable of serving an area of 1,000,000 acres of developed land.
Madera Canal. — The Madera Canal, maximum capacity 1500 second-feet, will extend from Friant Reservoir to Chowehilla River, a distance of 35 miles, and will be capable of furnishing irrigation water to an area of 140,000 acres.

 « * * Provides, further, That the entire Central Valley project, California, heretofore authorized and established under the provisions of the Emergency Relief Appropriation Act of 1935 (49 Stat. 115) and the First Deficiency Appropriation Act, fiscal year 1936 (49 Stat. 1622), is hereby reauthorized and declared to be for the purposes of improving navigation, regulating the flow of the San Joaquin River and the Sacramento River, controlling floods, providing for storage and for the delivery of the stored waters thereof, for the reclamation of arid and semiarid lands and lands of Indian reservations, and other beneficial uses, and for the generation and sale of electric energy as a means of financially aiding and assisting such undertakings and in order to permit the full utilization of the works constructed to accomplish the aforesaid purposes ; Provided, further, That, except as herein otherwise specifically provided, the provisions of the reclamation law, as amended, shall govern the repayment of expenditures and the construction, operation, and maintenance of the dams, canals * * * and the Secretary of the Interior may enter into repayment contracts, and other necessary contracts, * * * under the reclamation law, and may acquire by proceedings in eminent domain, or otherwise, all lands, rights-of-way, water rights, and other property necessary for said purposes: And provided further, That the said dam and reservoirs shall be used, first, fon river regulation, improvement of navigation, and flood control; second, for irrigation and domestic uses ; and, third, for power.